# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-1931

———————

Sharon Denise Kennell,

        Appellee,

    v.

Diahann Gates,

        Appellant.

Appeal from the United States
District Court for the
Eastern District of Missouri.

———————

Submitted: February 16, 2000
Filed: June 14, 2000

———————

Before BOWMAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Officer Diahann Gates of the St. Louis Metropolitan Police Department appeals from the jury verdict finding her liable under 42 U.S.C. § 1983 (Supp. III 1997) for plaintiff Sharon Denise Kennell's six-day confinement on an arrest warrant issued for Sharon's sister, Deborah Kennell. We must decide whether evidence that Gates was sent a report over an in-house computer message system indicating that the wrong sister was in custody is sufficient to allow a jury to find that Gates had actual knowledge of a substantial risk that Sharon was mistakenly imprisoned. We hold that the evidence was sufficient, and we affirm.

I.

We state the facts in the light most favorable to the jury's verdict. On March 30, 1995, Sharon Kennell was driving her mother to a credit union in Country Club Hills, a suburban municipality in St. Louis County. She was stopped by a Country Club Hills police officer because the car was missing its rear license plate. Because Sharon did not have her driver's license nor any other form of identification with her, she told the officer her full name, Sharon Denise Kennell, and her date of birth, June 14, 1959. The officer went to his vehicle, presumably to check the information by computer, and then returned to inform Sharon that her name was listed as an alias for Deborah Kennell for whom there was an outstanding arrest warrant.[1] Both Sharon and her mother told the officer that she was not Deborah Kennell and that Deborah was, in fact, Sharon's sister. Nevertheless, the officer arrested Sharon and had her transferred to the St. Louis City Police Department.

At the Department, Sharon was processed by Officer Diahann Gates of the Warrant and Fugitive Section. During processing, Sharon protested to Gates that she was not Deborah Kennell. Gates obtained record photographs of both sisters and concluded that Deborah's photograph matched Sharon.[2] Sharon then requested that her

_____

[1] On January 27, 1991, Deborah Kennell was arrested by the St. Louis City Police Department and gave her name as Sharon Kennell. After her deception was discovered, the Department listed Sharon Kennell as a known alias for Deborah Kennell on Deborah's record. Sharon and Deborah lived at the same address. The social security numbers and dates of birth of both Sharon and Deborah were listed on Deborah's arrest record. Sharon's arrest on the warrant issued for Deborah was based on this alias listing.

[2] As both sisters had prior arrests, the photographs presumably were obtained from departmental records. Sharon and Deborah are both of medium build, but Sharon is about two inches taller, and Deborah is about one year older. Gates denies having

fingerprints be taken in order to prove that she was not Deborah. Gates forwarded her to the Prisoner Processing Section, where she eventually was fingerprinted in the normal course of processing. After being fingerprinted, Sharon was placed in a holdover cell for about an hour. As Gates prepared to transfer Sharon to the workhouse, Sharon asked about the fingerprints. Gates responded, "Evidently, they came back Deborah Kennell." Sharon remained in the workhouse for six days until Deborah's parole officer arrived and discovered that the police had the wrong sister.

In fact, the report on Sharon's fingerprints had not yet come back. After Sharon was fingerprinted, her fingerprints were sent to the Identification Section where they were analyzed by Fingerprint Technician Laureen Dudley. Dudley discovered that Sharon's fingerprints did not match the prints on file for the individual described in the arrest warrant—that is, the fingerprints did not match the known prints for Deborah Kennell.[3] Dudley then sent an in-house computer message to the Warrant and Fugitive Section and specifically to the attention of Gates, notifying her that the wrong person was in custody. The message went out at 7:30 p.m. after Gates's shift that day had ended. Gates worked a regular eight-hour shift the next day and in the days to follow, but never took action to release Sharon. The message was sent via an in-house

---

obtained and compared the two photographs.

[3] Officer Dennis Stefen, the supervisor of the Fingerprint Processing Unit of the Prisoner Processing Division of the Department, testified regarding the Unit's identification procedures. Everyone arrested by the Department is fingerprinted for identification purposes. An individual arrested for the first time would then be assigned a local identification (LID) number, which is a unique identifying number. In the case of an arrestee with a prior arrest record, the fingerprints would be matched to the arrestee's LID number.
Both Sharon and Deborah had prior arrest records. Dudley determined that Sharon's fingerprints matched LID number 220521—Sharon's LID number—and not LID number 202549—Deborah's LID number and the LID number listed on the arrest warrant.

computer message system to a printer—similar to a teletypewriter—located in the Warrant and Fugitive Section office. In that office, there is only one printer, and it generates numerous messages every day. Although Gates has access to the printer, it is not her duty to check for messages. Gates testified that normally she either is handed the message or it is placed on her desk. In this case, however, Gates testified that she never received the message.

Sharon brought suit against the City of St. Louis, the Department, Gates, and several other Department employees, alleging various state claims and a 42 U.S.C. § 1983 claim. By the close of evidence at trial, the District Court had directed a verdict for all defendants except Gates. In her motion for a directed verdict, Gates argued that she was entitled to qualified immunity, that she acted reasonably in her efforts to identify Sharon, and that, even if she had not acted reasonably, a merely negligent mistake as to identity does not rise to the level of a constitutional violation. Gates added that her "failure . . . to receive the ID section memo is not proof of any wrongdoing on [her] behalf . . . but rather evidence of a breakdown in the interoffice mail system." Defendant's Board of Police Commissioners, Ryan and Gates Motion for Directed Verdict at the Close of Plaintiff's Case at 2.

The District Court denied Gates's motion, reasoning that "an individual can maintain a [§] 1983 action based on false detention, where there is evidence that the officer in question was deliberately indifferent to the information that would indicate that the detention was unlawful." Transcript of Trial at 193. The court agreed with Gates's characterization of the law, that a negligent mistake of identity does not constitute a constitutional violation, but concluded that the evidence of the Identification Section message was sufficient for a jury to conclude that Gates had acted with deliberate indifference:

> The jury has every reason to disbelieve Officer Gates'[s] testimony on [whether she received the Identification Section message], since it's

undisputed that this report from the identification section was sent to her. Whether she got it or not, that's up to the jury to decide. They may believe she didn't get it. They may believe she did get it.

. . .

. . . The issue is not whether [Gates] should have done more, so much as whether she had information available to her, in her possession, that would have told her that she had the wrong person.

Transcript of Trial at 189. Accordingly, the court submitted Sharon's § 1983 claim to the jury on a deliberate indifference instruction.[4] The jury returned a plaintiff's verdict for $10,000. The court denied Gates's motion for judgment notwithstanding the verdict or alternatively for a new trial. Gates now appeals.

---

[4] Only Sharon's § 1983 claim against Gates was submitted to the jury, and only that claim is before us on appeal. The deliberate indifference instruction stated:

Deliberate indifference is established only if there is actual knowledge of a substantial risk that plaintiff would be mistakenly imprisoned and if the defendant disregards that risk by intentionally refusing or failing to take reasonable measures to deal with the problem. Mere negligence or inadvertence does not constitute deliberate indifference.

Instruction No. 6 at 1. Gates did not object to, and does not appeal from, the use of this jury instruction, and thus it is the law of the case and the standard we use in reviewing the sufficiency of the evidence in this appeal. Nevertheless, we believe that a strong argument could have been made that false detention claims like Sharon's, in which the initial seizure is reasonable, should be reviewed under the more demanding "shocks-the-conscience" standard of Rochin v. California, 342 U.S. 165 (1952). See Baker v. McCollan, 443 U.S. 137, 147-48 (1979) (Blackmun, J., concurring). But see Gray v. Cuyahoga County Sheriff's Dep't., 160 F.3d 276, 276 (6th Cir. 1998), amending, 150 F.3d 579 (6th Cir.), cert. denied, 119 S. Ct. 1763 (1999); Romero v. Fay, 45 F.3d 1472, 1480 (10th Cir. 1995); Cannon v. Macon County, 1 F.3d 1558, 1562-64 (11th Cir. 1993), amended by, 15 F.3d 1022 (11th Cir. 1994); Sanders v. English, 950 F.2d 1152, 1160-62 (5th Cir. 1992).

II.

On appeal, Gates again argues that her acts amounted at most to negligence and do not constitute a constitutional violation. We review de novo whether there was sufficient evidence to support the jury's verdict. Gates must demonstrate that the evidence fails to support any reasonable inference that she violated Sharon's constitutional rights. See Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998). We completely agree with Gates's legal analysis that an unreasonable or negligent refusal to investigate claims of innocence or mistaken identity of an individual detained pursuant to facially-valid warrant for a few days does not amount to a constitutional violation. See Baker v. McCollan, 443 U.S. 137, 145-46 (1979); Lane v. Sarpy County, 165 F.3d 623, 624 (8th Cir. 1999). There is no question here that Sharon was arrested on a facially-valid warrant. Nor is there question that probable cause initially existed for Gates to believe that Sharon was the individual described in the warrant. Even assuming that Gates's failure to investigate Sharon's mistaken identity claim further or to inquire about the results of the fingerprint analysis was unreasonable or negligent, those actions cannot amount to a constitutional violation for this six-day confinement.

We are left, however, with the theory under which the District Court denied Gates's motion for a directed verdict: that the jury was entitled to infer that Gates was aware of the mistake and failed to act. In order for a jury to be able to find that Gates knew that Sharon was detained mistakenly—the finding required by the deliberate indifference instruction—Sharon was required to produce evidence sufficient for the jury to infer that Gates received and read the Identification Section message.

A jury generally is permitted to infer that information sent via a reliable means—such as the postal service or a telegram—was received. See United States v. Hairopoulos, 118 F.3d 1240, 1244 (8th Cir. 1997) ("A letter properly addressed and mailed is presumed to have been delivered to the addressee."); Wagner Tractor, Inc. v. Shields, 381 F.2d 441, 446 (9th Cir. 1967) ("There is a presumption of receipt after proper dispatch of a telegram analogous to letters properly mailed."). We see no principled reason why a jury would not be able to make the same inference regarding other forms of communication—such as facsimiles, electronic mail, and in-house computer message systems—provided they are accepted as generally reliable and that the particular message is properly dispatched. See, e.g., United States v. Galiczynski, 44 F. Supp. 2d 707, 714 (E.D. Pa.) ("The rebuttable presumption of service by mailing, or in this case, by fax, can be established by pointing to circumstantial evidence, such as evidence of standard operating office procedures or business practices regularly used concerning the mailing or faxing of documents by a party."), aff'd, 203 F.3d 818 (3d Cir. 1999); American Paging of Texas, Inc. v. El Paso Paging, Inc., 9 S.W.3d 237, 240 (Tex. App. 1999) ("Admission of evidence showing a telephonic document transfer to the recipient's current telecopier number gives rise to a presumption that notice was duly received by the addressee."); SSI Med. Servs., Inc. v. New Jersey, 685 A.2d 1, 5-6 & n.1 (N.J. 1996) (discussing nature of evidence required to raise presumption of mailing and receipt for electronic mail). In this case, Stefen, the supervisor of the Fingerprint Processing Unit, was able to testify that the message had been properly sent to Gates by looking at a copy of the message. Additionally, Stefen testified that the message had printed on the printer in the Warrant and Fugitive Section.[5] We believe that this

_____

[5] Stefen's testimony supports the conclusion that the message was sent to and received by the Warrant and Fugitive Section:

Q     Did you investigate the cause or whether or not a computer message in this particular case actually went out?
A     Oh, a computer message went out, because we have a copy of it. We keep copies . . . in the identification section of all of those.

testimony of one familiar with the reliability of this communication system that the message definitely had been sent is sufficient to allow a jury to reasonably conclude that the message in fact reached the Warrant and Fugitive Section.

There remains the further matter of whether there is evidence to suggest a finding that the message was delivered to Gates from the printer in her section. To demonstrate proper dispatch of a message, courts generally have accepted evidence of customary mailing practices. For example, this Court has applied the Texas rule that evidence of customary intra-company procedures is sufficient to establish that a particular letter was sent out. See Shur-Value Stamps, Inc. v. Phillips Petroleum Co., 50 F.3d 592, 595-96 (8th Cir. 1995). If evidence of an organization's mail room practices is sufficient to establish that an outgoing letter from employee Jane Doe was dispatched to the

---

Q     So can you tell me for sure that this computer message . . . actually did go out addressed to Police Officer Gates?
A     That is correct.
Q     And it went out at the time and on the date at the top of the page?
A     Yes. It went out at 7:30 p.m. on March 30th, 1995.
Q     When you get a mistaken identity case such as this one, does the . . . fingerprint technician or the person who generates the report, make a phone call to the department or to that arresting officer to tell them?
A     No, no. It's all done electronically by computer message. No telephonic notifications are made.
Q     And everybody knows to check their messages on those types of things?
A     Yes. If you're there in the building, if you're working. You know, if not, your messages just pile up if you're off.
Q     And do you know how they're distributed? The messages that are addressed to individuals?
A     In the Warrant and Fugitives office, I have no idea how they make distribution. All I know is the messages do print off, you know.

Transcript of Trial at 131-32.

addressee, then similar evidence of customary mail room practices should be sufficient to establish that an incoming letter to employee Jane Doe was received by her. Both situations depend on the reliability of the organization's internal delivery processes, and evidence regarding the customary workings and reliability of those processes should be sufficient. In this case, Gates testified that she normally gets the printer messages and that they are either handed to her or placed on her desk by a clerk in the Warrant and Fugitive Section who is responsible for deliveries. There is no evidence that Gates had failed to receive other printer messages. Though we regard this as a very close call, we believe this evidence sufficient to allow the jury to reasonably infer that the Identification Section message was delivered to Gates from the printer in her section.

Of course, the jury was not required to conclude that Gates received the Identification Section message. As the District Court pointed out, the jury could have believed her testimony that, despite the customary delivery procedures, she never received the message. But, given the verdict, it is apparent the jury did not find her testimony credible. Credibility determinations of this sort are for the jury to make and may not be overturned by reviewing judges. Because the evidence supports a reasonable inference that Gates received the message and knew that Sharon was detained wrongfully, and because we hold that Gates's actual knowledge of this wrongful detention is sufficient to establish deliberate indifference in this § 1983 case, we must affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.