**Freddie GARCIA and Doreen Garcia, individually and on behalf of their minor children,**

v.

**COUNTY OF BUCKS, PA., Charles H. Martin, Commissioner, Michael G. Fitzpatrick, Commissioner, Sandra A. Miller, Commissioner, Lawrence R. Michaels, Sheriff, William Dalton, Chief Deputy Sheriff, G.J. Gaittens, Deputy Sheriff, Officer T. Tall and Second John Doe Officer.**

No. CIV.A. 00–2446.

United States District Court, E.D. Pennsylvania.

March 27, 2001.

Jonathan J. Williams, Philadelphia, PA, for plaintiffs.

James A. Downey, III, Begley, Carlin & Mandio, Langhorne, PA, for defendants.

---

## MEMORANDUM

WALDMAN, District Judge.

Plaintiffs have asserted claims under 42 U.S.C. § 1983 and related state tort claims against Bucks County, its Commissioners, its Sheriff and several Deputy Sheriffs arising from the arrest of plaintiff Freddie Garcia pursuant to a valid warrant for a "Freddie Garcia" and his brief detention until a Deputy Sheriff learned that Mr. Garcia was not the subject of the warrant. They seek $500,000 in compensatory damages and $5,000,000 in punitive damages.[1]

In Count I, plaintiff Freddie Garcia asserts § 1983 claims for false arrest, excessive force, false imprisonment and deliberate indifference to his medical condition against officers Tall and John Doe based on purported violations of Mr. Garcia's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights.[2] In Count II, he asserts state tort claims of false arrest and false imprisonment against these officers.[3] In Count III, he asserts a § 1983 claim against Bucks County predicated variously on a failure to train or supervise its officers and a policy or practice of permitting false arrests.[4]

---

1. Plaintiffs also seek a declaration that the conduct complained of violated their constitutional rights and an injunction prohibiting defendants from engaging in "the unlawful practices, policies, customs and usages set forth" in the complaint.

2. Although the complaint does not explicitly include a deliberate indifference claim, the factual recitation suggests that Mr. Garcia attempted to plead such a claim and defendants address the claim as if pled in their motion.

3. The complaint variously refers to the unidentified officer as "John Doe One" and "John Doe Two." As only one John Doe defendant is listed in the caption, the court assumes "John Doe One" and "John Doe Two" are the same person.

4. It appears that the County Commissioners were named as the policymakers who are allegedly responsible for "a pattern or practice of the County of falsely arresting people." Although less clear, it appears that the Sheriff, his Chief Deputy and Deputy Gaittens were named as the officials allegedly responsible for a failure adequately to train and supervise others in the Sheriff's office. In any event, municipal liability may be imposed only for a practice or policy which can be attributed to a municipal officer with final decisionmaking authority for the matter at issue, and it is the municipality itself which is a proper defendant on such a claim. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir.1995). Perhaps, the pleader was attempting to set forth claims against the Sheriff and two Deputies for the conduct of Messrs. Tall and Doe on a theory

■ The basis of the claims by Doreen Garcia and the minor children is not altogether clear. The only assertions in the complaint in this regard are an allegation in the factual preamble that as a result of Mr. Garcia's detention for two days, his wife and children suffered a loss of "care and championship [sic]" and a request in the prayer for relief that they receive damages for "pain and suffering."[5]

Defendants have filed a motion to dismiss for failure to state a claim. Such dismissal is appropriate when it clearly appears that the plaintiff can prove no set of facts to support the claim which would entitle him or her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984). Such a motion tests the legal sufficiency of a claim accepting the veracity of the claimant's allegations. *See Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 179 (3d Cir.1988).

In their second amended complaint, plaintiffs allege the following.

Mr. Garcia was arrested on a valid warrant on March 1, 2000 by Bucks County Deputy Sheriff Tall and another unknown "John Doe" Deputy Sheriff.[6] In effecting the arrest, the officers grabbed Mr. Garcia's coat and arms, and handcuffed him. Mr. Garcia maintained that he was not the person sought in the warrant. He offered to show the officers a social security card, a birth certificate and other unspecified documentation to confirm his identity. Mr. Garcia's address and birth date were different than those of the subject of the warrant.[7] The officers ultimately looked at Mr. Garcia's identification but told him he would have to "tell it to the judge."

Upon his detention, Mr. Garcia was subject to a strip search and his medication

---

of supervisory liability, but this is far from clear in dissecting the complaint. While not so identified in the caption, plaintiffs also characterize as a "defendant" in the body of the complaint the "Bucks County Sheriff's Department." The Sheriff's Department, of course, is not an entity subject to suit under § 1983. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26, n. 4 (3d Cir.1997); *Irvin v. Borough of Darby*, 937 F.Supp. 446, 450 (E.D.Pa.1996).

5. Insofar as plaintiffs are asserting claims for loss of consortium, minor children have no such claim. *See Schroeder v. Ear, Nose, & Throat Assocs. of Lehigh Valley, Inc.*, 383 Pa.Super. 440, 557 A.2d 21, 22 (1989); *Steiner v. Bell Tel. Co. of Pa.*, 358 Pa.Super. 505, 517 A.2d 1348, 1354 (1986). Doreen Garcia's claim would be derivative from and dependent on Mr. Garcia's tort claims. *See Wakshul v. City of Philadelphia*, 998 F.Supp. 585, 590 (E.D.Pa.1998). There is no derivative claim under § 1983 for loss of consortium. *See Quitmeyer v. Southeastern Pa. Transp.* *Auth.*, 740 F.Supp. 363, 370 (E.D.Pa.1990). Some courts have recognized claims by plaintiffs who have asserted a deprivation of their own right to familial association based on the permanent physical loss of association with an immediate family member as a result of unlawful state action, however, no such claim has been recognized for a loss of association of several days. *See Pittsley v. Warish*, 927 F.2d 3, 8 (1st Cir.1991).

6. It does not appear from the complaint why or by whom the warrant was issued, although there is a suggestion it may have involved violation of a child support order. In their brief, however, plaintiffs state that the warrant was issued on fraudulent vehicle registration charges.

7. There is no allegation that the face of the warrant contained the subject's address, social security number or birth date or that this information was known to the officers at the time.

was confiscated by unidentified persons associated with the Sheriff's office.[8] Although Mr. Garcia explained that the medication was necessary to treat his diabetes, he was not provided with diabetic medication or a suitable diet. Apparently jail authorities were alerted as a nurse took two readings of Mr. Garcia's blood sugar level during the two days he was detained. The level was "high" and later "very high."

On March 2, 2000, Deputy Sheriff Gaittens confirmed that the Freddie Garcia who was the subject of the warrant and plaintiff had different dates of birth. The Officer issued a letter on that date directing that Mr. Garcia not be held.

■ The Fifth Amendment, of course, does not apply to state action. *See Bartkus v. Illinois*, 359 U.S. 121, 158–59, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Nguyen v. United States Catholic Conference*, 719 F.2d 52, 54 (3d Cir.1983); *Huffaker v. Bucks County Dist. Attorney's Office*, 758 F.Supp. 287, 290 (E.D.Pa.1991). Thus, defendants are entitled to dismissal of any claim predicated on the Fifth Amendment.

■ A claim of excessive force in the context of an arrest is governed by the Fourth Amendment. A plaintiff must allege facts sufficient to show that he was seized with an exercise of force which was objectively unreasonable. *See Brower v. County of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999); *Mayard v. Hopwood*, 105 F.3d 1226, 1227–28 (8th Cir.1997). Mr. Garcia has not done so. The restraint alleged by Mr. Garcia was minimal and routine. It did not result in even de minimus injury.

■ To maintain a § 1983 false arrest claim, a plaintiff must show that the arresting officer lacked probable cause to make the arrest. *See Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). *See also Smith v. Borough of Pottstown*, 1997 WL 381778, *11 (E.D.Pa. June 30, 1997) (plaintiff cannot maintain a § 1983 false arrest claim where police officers had probable cause to arrest him). When an officer does make an arrest without probable cause, the arrestee may also assert a § 1983 false imprisonment claim based on any subsequent detention resulting from that arrest. *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir.1995). A § 1983 false imprisonment claim based on an arrest without probable cause is grounded in the Fourth Amendment guarantee against unreasonable seizures. *Id.*

■ Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense. *See Sharrar v. Felsing*, 128 F.3d 810, 817–18 (3d Cir. 1997). Police officers acting pursuant to a facially valid warrant generally are deemed to have probable cause to arrest. *See Kis v. County of Schuylkill*, 866 F.Supp. 1462, 1469 (E.D.Pa.1994). An officer making an arrest pursuant to such a warrant generally is not required to investigate the arrestee's claim of innocence or mistaken identity. *See Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Kennell v. Gates*, 215 F.3d 825 828 (8th Cir.2000) (even unreasonable refusal to investigate claim of mistaken identity by person arrested and detained for six days pursuant to facially valid warrant does not amount to constitutional violation). *See also Masters v.*

---

**8.** Although never alleged, the court infers that Mr. Garcia was detained at the Bucks County Correctional Facility.

*Crouch,* 872 F.2d 1248, 1252–53 (6th Cir. 1989); *Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988); *Thompson v. Olson,* 798 F.2d 552, 556 (1st Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987).[9]

■ This does not mean, of course, that an officer may arrest an individual whom he knows it not the subject of the warrant or indefinitely detain an arrestee without attempting to resolve an apparent issue of identity. *See Kennell,* 215 F.3d at 829–30 (distinguishing officer with apparent knowledge that plaintiff was detained mistakenly from those who merely failed to investigate her claim of mistaken identity); *Gray v. Cuyahoga County Sheriff's Dep't.,* ·150 F.3d 579, 582–83 (6th Cir.1998) (detention of plaintiff for forty days after receipt of photograph of subject of warrant that "bore virtually no resemblance" to plaintiff found actionable). There is no allegation, however, that either Deputy Tall or Doe knew they were arresting the wrong person or that Mr. Garcia was inordinately detained after the mistake was verified.

■ Mr. Garcia alleges that he protested he was not the subject of the warrant, and offered to show the officers a social security card and birth certificate to substantiate his claim. An arresting officer does not, of course, have to accept at face value an arrestee's claim of innocence or mistaken identity. While the Freddie Garcia named in the warrant was younger than Mr. Garcia and presumably had a different social security number, there is

no factual allegation that the Sheriff's office knew the subject's date of birth, social security number or other identifying information on March 1, 2000. What does appear from the complaint is that by the following day Deputy Sheriff Gaittens had verified that the Freddie Garcia named in the warrant and Mr. Garcia had different dates of birth, and authored a written communication to effect Mr. Garcia's release. The only logical inference is that between March 1st and March 2nd the Sheriff's office did act to ascertain and rectify the mistake in identity.[10]

Although the complaint refers to the First Amendment, the facts alleged do not remotely implicate Mr. Garcia's First Amendment rights.

■ As to Mr. Garcia's Eighth Amendment claim for deliberate indifference to his medical condition, it is the Fourteenth and not the Eighth Amendment which applies to pretrial detainees. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Nevertheless, the court will construe the claim as one for deliberate indifference under the Fourteenth Amendment.

■ The same deliberate indifference standard is applied to Eighth and Fourteenth Amendment prison medical claims. *See Reynolds v. Wagner,* 128 F.3d 166, 173 (3d Cir.1997). Thus, to maintain such a claim, the plaintiff must show that a failure to provide medical care amounted to delib-

---

**9.** While any statement to Mr. Garcia by an officer to "tell it to the judge" may have been a bit flippant, a colleague has used just that colloquial expression in discussing the practical realities in a similar mistaken identity arrest case. *See Alvarez v. Freiwald,* 1993 WL 542877, *5 (E.D.Pa. Dec.23, 1993).

**10.** As it appears from the pleadings that Mr. Garcia's arrest on March 1st and detention until March 2nd were not unlawful, he has also failed to set forth cognizable state tort claims for false arrest and false imprisonment. *See Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289, 293 (1994); *Grant v. Borough of Darby,* 1999 WL 236609, *5–6 (E.D.Pa. Apr.15, 1999).

erate indifference to a serious medical condition. *See Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir.1995).

▮▮▮▮ The court will assume that Mr. Garcia's diabetes was a serious medical condition. *See Rouse v. Plantier,* 182 F.3d 192, 198–99 (3d Cir.1999) (recognizing that some, although not all, insulin-dependent diabetics have a serious medical condition and concluding that persistent failure to monitor their blood sugar levels could amount to deliberate indifference).[11] Plaintiffs, however, allege no facts which show that any defendant was deliberately indifferent to Mr. Garcia's medical needs after his detention. A nurse was assigned to monitor Mr. Garcia's blood-sugar level. Even assuming that the point had been reached where medication or other treatment was required, there is no factual allegation from which it reasonably appears that anyone other than the nurse would have been deliberately indifferent.[12]

In the § 1983 claim against Bucks County in Count III, plaintiffs assert that the County has a policy or custom of tolerating police misconduct, that the County has a pattern or practice of falsely arresting persons and that the County inadequately trains and supervises its police officers.

▮▮▮▮ There is no respondeat superior liability under § 1983. *See Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Andrews v. Philadelphia,* 895 F.2d 1469, 1478 (3d Cir.1990). To be liable for a constitutional tort, a superior officer must personally participate or knowingly acquiesce in the offend-

ing conduct of a subordinate. *Id.* A municipality is liable for a constitutional tort only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of. *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1295 (3d Cir.1997) (quoting *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

▮▮▮▮ "Policy" is made when a decisionmaker with final authority to establish municipal policy with respect to the action in question issues an official proclamation, policy or edict. An action by a municipal official may constitute a "policy" if he has final discretionary authority to act with regard to the subject matter in question and deliberately chooses a particular course of action from among various alternatives. *See Bello v. Walker,* 840 F.2d 1124, 1129–30 (3d Cir.1988). A "custom" is a course of conduct which, although not formally authorized by law, reflects practices of state officials that are so permanent and well settled as to virtually constitute law. In either case, it is incumbent upon a plaintiff to show that a final policymaker is responsible for the policy or custom at issue. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Andrews,* 895 F.2d at 1480. A municipal official is not a final policymaker if his decisions are subject to review and revision. *See Morro v. City of Birmingham,* 117 F.3d 508, 510

---

11. Plaintiffs do not allege that Mr. Garcia was insulin-dependent.

12. The initial confiscation of medication from Mr. Garcia alone is not actionable. Prison authorities "universally confiscate medications" from new inmates. *Dawson v. Kendrick,* 527 F.Supp. 1252, 1307 (S.D.W.Va. 1981). Because of their responsibility to pro-

vide proper medical care, prison authorities clearly have a legitimate interest in controlling the prescription and administration of medication to persons in their custody. Legitimate prisoner safety and prison security interests are also clearly implicated by inmate possession of even prescription drugs.

(11th Cir.1997) *cert. denied,* 523 U.S. 1020, 118 S.Ct. 1299, 140 L.Ed.2d 465 (1998).

 A municipality may be liable under § 1983 for a failure to train subordinate officers only where such failure reflects a policy of deliberate indifference to the constitutional rights of citizens. *See City of Canton v. Harris,* 489 U.S. 378, 390–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 725 (3d Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). The same standard applies to claims of inadequate supervision. *See Groman,* 47 F.3d at 637. The standard has been characterized as a "difficult" one. *See Reitz v. County of Bucks,* 125 F.3d 139, 145 (3d Cir.1997).

 To maintain such a claim, a plaintiff must show that a responsible municipal policymaker had contemporaneous knowledge of the offending occurrence or knowledge of a pattern of prior incidents of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question or otherwise communicated a message of approval to the offending subordinates. *See City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197; *Montgomery v. DeSimone,* 159 F.3d 120, 127 (3d Cir.1998); *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1059–60 (3d Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992).

 A need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures. *See Jones,* 787 F.2d at 205; *Fulkerson v. City of Lancaster,* 801 F.Supp. 1476, 1483 (E.D.Pa.1992), *aff'd,* 993 F.2d 876 (3d Cir.1993). It is not sufficient merely to show that a particular officer acted improperly or that better training would have enabled an officer to avoid the particular conduct causing injury. *See Simmons,* 947 F.2d at 1060. Any failure to train or supervise adequately, of course, must also cause the violation about which the plaintiff complains. *Id.* at 1065.

 A plaintiff must show that the cause of his harm was a constitutional violation and that the municipal defendant was responsible for this violation. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). As Mr. Garcia's mistaken arrest, handcuffing and brief detention did not violate the constitution, it follows that no defendant is responsible for causing a constitutional violation. Moreover, no facts are alleged to support the conclusion that there is "a pattern or practice of the County of falsely arresting people." [13]

 In three attempts, plaintiffs have failed to plead cognizable claims.[14]

---

**13.** Plaintiffs otherwise refer only to prior acts of "police misconduct" generically. In their complaint and two amended complaints, they allege that such misconduct was tolerated by the County including "the following incidents:" In none of the complaints does anything follow that semi-colon. In any event, the alleged actions of the defendant Deputy Sheriffs did not constitute "misconduct."

**14.** As plaintiffs have failed to show their rights have been violated, they may not obtain a declaratory judgment to the contrary. Moreover, such a declaration would be inap-

propriate in any event as it could only accompany and mirror an adjudication of the legal claims. Even assuming that plaintiffs had adequately set forth § 1983 claims, they would not be entitled to injunctive relief in the absence of any allegations which reasonably show they will again be subjected to the unlawful conduct complained of. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Davis v. Thornburgh,* 903 F.2d 212, 222 (3d Cir.1990). Pretrial detainees may be subject to strip searches without probable cause, *see Bell v.*

Defendants' motion will be granted. Because it is conceivable that a cognizable claim might yet be pled consistent with Fed.R.Civ.P. 11(b), the dismissal will be without prejudice. An appropriate order will be entered.[15]

### ORDER

**AND NOW,** this day of March, 2001, upon consideration of defendants' Motion to Dismiss (Doc. # 6) and plaintiffs' response thereto, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** and plaintiff's second amended complaint is **DISMISSED,** without prejudice to replead within twenty days to assert any cognizable claim which may be pled consistent with the strictures of Fed. R.Civ.P. 11(b); and, **IT IS FURTHER ORDERED** that plaintiffs' Motion to Dismiss Defendants' Motion to Dismiss (Doc. # 9) is **DENIED.**

*Wolfish,* 441 U.S. 520, 560, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), although such searches are deemed reasonable only when conducted for a legitimate institutional security related purpose. *See Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1446–47 (9th Cir.1991); *Masters,* 872 F.2d at 1253–55. In any event, no discrete claim has been set forth regarding the alleged strip search and there are no factual allegations from which it appears that any defendant was responsible for the search even assuming it was unreasonable.

15. Plaintiffs also filed a "Motion to Dismiss Defendants' Motion to Dismiss." This is not a motion at all, but rather a response to defendants' motion. In any event, absolutely no basis exists or is suggested by plaintiffs' counsel for "dismissing" the defendants' motion to dismiss. Accordingly, plaintiffs' "Motion to Dismiss" will be denied.