**Eileah CLEVELAND Plaintiff,**

v.

**CITY OF DETROIT, et al., Defendants.**

No. 01–72566.

United States District Court,
E.D. Michigan,
Southern Division.

July 10, 2003.

---

Charles H. Chomet, Kelman, Loria, Detroit, MI, for plaintiff.

Paula L. Cole, Detroit City Law Dept., Detroit, MI, for City of Detroit, Shawn Davison, Joseph Dabliz, Leon Moore, defendant.

Margaret A. Nelson, Michigan Dept. of Atty. Gen., Lansing, MI, for Sherylyn Turner Matthew Rice, defendants.

Richard M. Barron, Genesee County Corp. Counsel, Flint, MI, for County of Genesee, Officer Heath, Lieutenant Sorensen, Sergeant Snyder, Sergeant Wilson, Lieutenant Becker, Sergeant Dwyre, Vera Dillard, Eric Verhelst, defendants.

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION TO FILE A THIRD AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

COHN, District Judge.

### I. Introduction

This is a wrongful arrest and detention case based on mistaken identity. Plaintiff Eileah Cleveland (Cleveland) was arrested by City of Detroit police officers and transferred to Genesee County Jail pursuant to an arrest warrant for an individual named Shirvell Cleveland (Shirvell) with a birth date similar to that of Plaintiff. Cleveland claims each of the individual defendants violated 42 U.S.C. § 1983 and state tort laws including assault, battery, false imprisonment, and gross negligence.[1] There are three sets of defendants: (1) "City Defendants" Officer Shawn Davidson (Davidson), Officer Joseph Dabliz (Dabliz), civilian Elaine Davis (Davis), Lieutenant Leon Moore (Moore), Lieutenant Brown (Brown), and the City of Detroit (Detroit); (2) "State Defendants" Sergeant Matthew Rice (Rice) and Trooper Sherilyn Turner (Turner); and (3) "County Defendants" Officer Eric Verhelst (Verhelst), Officer Heath (Heath), Officer Anne Dillard (Dillard), Sergeant Ninnis (Ninnis), and Genesee County (Genessee).[2]

---

1. Cleveland's complaint initially included claims based on violation of the Michigan Constitution and malicious prosecution; she has abandoned these claims.

2. The first names of Brown, Heath, and Ninnis are not included in the papers.

Before the Court are Cleveland's motion to file a third amended complaint and motions for summary judgment by all defendants. For the reasons that follow, the motion to file a third amended complaint will be granted, the City Defendants' motion for summary judgment will be granted in part and denied in part, the State Defendants' motions for summary judgment will be granted, and the County Defendants' motion for summary judgment will be granted in part and denied in part.

## II. Factual Background

On October 24, 2000 at approximately 10:00 pm, Detroit Police Officers Davidson and Dabliz stopped a car in which Cleveland was riding for an equipment violation or for failure to stop at a stop sign (it is not clear which) and because the car's registration tag was not current. Cleveland threw a crack pipe to the ground when she got out of the car. The officers recovered it and issued her a ticket for possession of narcotics paraphernalia and placed her under arrest. Cleveland did not have identification with her so she provided her personal information orally. The ticket included Cleveland's full name (Eileah Katura Cleveland), date of birth (June 13, 1963),[3] social security number, Detroit home address, and weight (150 pounds). The arrest ticket and the Preliminary Complaint Report prepared by the officers contain the same information.

The officers ran Cleveland's name and date of birth through the Law Enforcement Information Network (LEIN) to ascertain whether there were any outstanding warrants for her arrest. The LEIN system reported that there was an outstanding Michigan State Police felony warrant[4] for an individual named Shirvell Cleveland who was a 5'2" black female with a birth date of June 13, 1964, weighing 120 pounds with no identifying tattoos or scars.[5] Shirvell had several addresses, but none matched Cleveland's address and none were in Detroit.

Davidson contacted the State Police Department in Flint and spoke to State Police Sergeant Rice. Davidson requested confirmation of a warrant for Shirvell Cleveland with a birth date of June 13, 1964. Rice confirmed that the warrant was valid. There is a dispute over whether Davidson (or anyone else) informed Rice that there was a discrepancy between the first name and birth year stated by Cleveland and those stated in the warrant. Davidson did not request any further information from Rice to clear up the discrepancies between Cleveland's stated personal information and that in the warrant. Rice had access to the Original Incident Report, which provided additional personal information for Shirvell in addition to photographs and fingerprints, all of which was different from that of Cleveland, but he was not asked to consult it and did not in fact consult it.

Dabliz and Davidson took Cleveland into custody and transported her to the Detroit Police Department's 10th Precinct for processing. Cleveland says that when she insisted her name was Eileah, the officers called her a liar. The officers left Cleve-

---

3. Cleveland told Davidson her birth date was June 13, 1963. There is a dispute of fact as to whether Cleveland told Dabliz her birth date was June 13, 1963 or June 13, 1964.

4. The warrant was for delivery of a controlled substance and carrying a concealed weapon.

5. When the LEIN system reports back an outstanding warrant on a person whose identifying information closely—but not completely—matches the information put into the system, it is called a "sound-alike." A "hit" is an exact match of information.

land at the 10th Precinct and had no further contact with her.

Lieutenant Moore was the officer in charge of the shift at the 10th Precinct when Cleveland arrived. Dabliz and Davidson told Moore that Cleveland had a similar name and date of birth to a person wanted on a Michigan State Police felony warrant. Moore's duties include approving arrests and verifying that a person picked up on a fugitive warrant is the person named in the warrant. The officers agreed they would normally have told Moore about discrepancies of name and date of birth, but no one recalls whether they actually did so. Lieutenant Brown assumed Moore's responsibilities when the shift changed. Neither Moore nor Brown did anything to verify that Cleveland was the person named in the warrant.

Cleveland was photographed and fingerprinted by the booking officer at the 10th Precinct. Dabliz and Davidson testified that pursuant to the City of Detroit Police Department policy, it was not their responsibility to check the fingerprints of an arrested individual against those of an individual whose name appears in the LEIN system. They also testified that the Identification Unit is responsible for making sure an arrested person is the person named in the warrant. Cleveland's fingerprint card was taken to the Detroit Police Department's Identification Unit at Police Headquarters. Davis received Cleveland's fingerprints. She did not compare them with the fingerprints of the person named in the warrant—Shirvell. There is a dispute of fact as to whether Shirvell's fingerprints were even accessible by Davis.

The next morning State Police Trooper Turner picked up Cleveland in Detroit and took her to Flint. Turner did not have with her a photograph or fingerprints of Shirvell; she only had with her a copy of the warrant for Shirvell's arrest. Cleveland told Turner during the ride to Flint that she was not Shirvell.[6] Turner did not investigate Cleveland's claim of mistaken identity; she testified that denial of responsibility and claims of mistaken identity are commonplace among the prisoners she transports.

Turner brought Cleveland to the Genessee County Jail. At the Jail, Cleveland was arraigned by a judge of the 67th District Court by video conference. The judge ordered her to be held by the Sheriff until such time as bail might be posted. Cleveland did not mention the misidentification problem at the arraignment, but she was not offered an opportunity to do anything other than ask for an attorney. The arraignment took six minutes. It is not clear from the record whether Turner or any of the County Defendants were present at the arraignment.

Turner completed an arrest card or "booking card" and property report and turned Cleveland over to a sheriff's deputy for Genesee County. Turner had no further contact with Cleveland.

Verhelst was the booking officer at the Genesee County Jail; he photographed Cleveland. Ninnis was probably the booking sergeant at the time. Cleveland says she told Heath, who fingerprinted her during booking, that she was not Shirvell. No one compared the booking card and the warrant, or the photograph and fingerprints with those on file for Shirvell. The Genesee County Defendants say that, as a matter of policy, these prints are only filed, not examined or compared to prints in the arrest warrant. Cleveland says she told Defendant Officer Dillard on the second day of incarceration that she was not

---

**6.** The parties dispute the number of times Cleveland told this to Turner, but it is undis- puted that she did say so at least once.

Shirvell; Dillard did not investigate the matter. Cleveland never filed an official written complaint about her incarceration with anyone at the jail or with the court.

Cleveland's mother, Ms. Watson (Watson), and her cousin, Johnny Smith (Smith) made three attempts to visit Cleveland. They were told each time that they could not do so.[7] Cleveland says Watson and Smith explained about the mistaken identity problem and showed Cleveland's picture identification to the sergeant working at the desk, Ninnis, on the first visit; Ninnis did not investigate the matter. The Genesee Defendants say that Watson and Smith did not raise the issue of Cleveland's identity but merely presented her identification cards to indicate who they wanted to see.

A lawyer was appointed to represent Cleveland.[8] Watson contacted the lawyer and showed him Cleveland's identification. The lawyer presented the identification to the court at the preliminary examination on the felony charges. The prosecutor voluntarily dismissed the charges. Cleveland was then released on November 11, 2000, after spending two weeks in jail.

### III. Motion to Amend the Complaint

Cleveland seeks to amend her complaint to allege violations of the Fourteenth Amendment in her § 1983 claim and to claim that the City of Detroit and Genesee County policies violated the Fourth and Fourteenth Amendments.

■ Under Fed.R.Civ.P. 15(a), a party may amend its complaint after 20 days "only by leave of court or by written consent of the adverse party;" and leave to amend pleadings "shall be freely given when justice so requires." The decision whether or not to permit the amendment

is committed to the discretion of the trial court. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–32, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Estes v. Kentucky Util. Co.*, 636 F.2d 1131, 1133 (6th Cir.1980). This discretion, however, is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *See Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.1987) (citation omitted).

■ In determining whether to permit amendment, some of the factors that may be considered by the district court are undue delay, lack of notice to the opposing party, bad faith, repeated failure to cure deficiencies by previous amendments, undue prejudice, and futility of amendment. *Hageman v. Signal L.P. Gas, Inc.* 486 F.2d 479, 484 (6th Cir.1973); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Delay by itself is not sufficient to deny a motion to amend. *Hageman*, 486 F.2d at 484; *General Elec. Co. v. Sargent & Lundy* 916 F.2d 1119, 1130 (6th Cir.1990). Moreover, in denying a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986).

■ Given the liberal standard for granting leave to amend a complaint and the lack of demonstrated prejudice caused by the amendment, Cleveland's motion to file a third amended complaint is GRANTED.

### IV. Motions for Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that there

---

**7.** The first visit was on a Sunday. The next two times they were told Cleveland was in court. Cleveland says, however, that she was not actually in court on either occasion.

**8.** The timing of appointment of counsel is in dispute. Cleveland says she did not have actual legal representation until the day of her release.

is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In so doing, the Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir.1995). Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir.2001). If a nonmoving party cannot establish a genuine issue for trial on any essential element of her claim, then the moving party is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. Count One: § 1983 Claims

#### 1. § 1983 Claims Against Individual Defendants

■ In order to make out a § 1983 claim, a plaintiff must show (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by the defendant while acting under color of state law (3) occurring without due process of law. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). Here Cleveland claims her right to be free from wrongful arrest under the Fourth Amendment and her right to due process of law under the Fourteenth Amendment were violated.

■ Cleveland's claim that she was wrongfully arrested fails as a matter of law because it is based solely on her argument that the arresting officers should have known she was innocent. "Respondent's innocence of the charge contained in the warrant ... is largely irrelevant to his claim of deprivation of liberty" and "we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

■ Cleveland's claim that her right to due process was violated is based on her continued incarceration even after the several defendants should have known she was not the person named in the warrant. In general, holding a person under a facially valid order of commitment from a court does not constitute a constitutional violation, even if it turns out that the person was wrongfully arrested. *Id.* at 144, 99 S.Ct. 2689 (finding that a three-day detention did not amount to a violation of due process). Even "an unreasonable or negligent refusal to investigate claims of innocence or mistaken identity of an individual detained pursuant to a facially-valid warrant for a few days does not amount to a constitutional violation." *Kennell v. Gates*, 215 F.3d 825, 828 (8th Cir.2000). There is a limit to the extent to which the police may rely on a facially valid warrant to justify ongoing detention, however. The Sixth Circuit has held that there was a constitutional violation when an inmate was confined for forty-one days over his repeated protests even though the sheriff

had clear information, including a photograph of the wanted person, that the inmate was not the person sought. *Gray v. Cuyahoga County Sheriff's Dept.*, 150 F.3d 579, 581–83 (6th Cir.1998).

 Also, the defense of qualified immunity is available to an officer accused of violating a plaintiff's constitutional rights if the officer believed his or her conduct did not violate clearly established constitutional rights and that belief was objectively reasonable. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The objective reasonableness of the official's action is determined by the law existing at the time of the conduct in question. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The officer's conduct is measured against the knowledge of a reasonable officer acting in similar circumstances. *Boyle v. Burke*, 925 F.2d 497 (1st Cir.1991). Officers are entitled to qualified immunity even when they make mistakes, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir.1998). Subjective factors and surrounding circumstances generally are not relevant to the determination. *Davis*, 468 U.S. 183, 104 S.Ct. 3012.

#### a. Detroit Defendants

The Detroit Defendants are as follows: the arresting officers, Dabliz and Davidson; the lieutenants at the precinct station, Moore and Brown; and the fingerprint expert, Davis. Cleveland has not made a valid claim that Dabliz or Davidson violated her constitutional rights. Her arrest was supported by probable cause (she was found with a crack pipe in her possession), and the information provided by the LEIN system was sufficiently similar to that stated by Cleveland to warrant further investigation. Dabliz and Davidson did not participate in her ongoing deten-

tion. Cleveland's § 1983 claims against Dabliz and Davidson are DISMISSED.

 Moore and Brown were responsible for ensuring that Cleveland was actually the individual named in the warrant. They therefore had a duty to Cleveland to investigate her claim of mistaken identity. There is some evidence in the record that they were aware of her claim and that they had the ability to resolve it with the information then available to them (the description in the warrant, fingerprints, etc.) Cleveland's § 1983 claims against Moore and Brown therefore must be resolved by a trier of fact to determine whether their actions were reasonable under the circumstances.

 Davis is a civilian who analyzes finger prints for the Detroit Police Department. There is no evidence that she was asked to compare Cleveland's fingerprints to those included in the warrant or that she would normally do so as a routine practice. Without some evidence establishing a duty on the part of Davis to Cleveland, Cleveland's § 1983 claim against Davis fails and is DISMISSED.

The § 1983 claims Dabliz, Davidson, and Davis are DISMISSED. The § 1983 claims against Moore and Brown continue.

#### b. State Defendants

The State Defendants are Rice and Turner. Rice verified the arrest warrant, and Turner took Cleveland from Detroit to Flint. There is no evidence that either one did anything more than routine, low-level police work in connection with her custody. Whether Rice was told of the discrepancy in first name and birth year or not, the only action he is said to have taken is to tell Davidson that there was a valid arrest warrant as to Shirvell. This does not amount to a violation of Cleveland's constitutional rights and a reason-

able officer would not have thought this was improper conduct.

■ Turner's action in taking Cleveland to Flint pursuant to a valid arrest warrant was similarly reasonable. She was performing a low-level function with no discretion. The fact that she did not act on Cleveland's protestations of innocence is insufficient to create liability where her job was to transport Cleveland from Detroit to Flint. Her actions did not implicate Cleveland's due process rights. The State Defendants' motions for summary judgment are therefore GRANTED and Cleveland's claims against Rice and Turner are DISMISSED.

#### c. Genesee Defendants

■ There is some evidence in the record that Dillard, Heath, Verhelst, and Ninnis were each aware of Cleveland's claim of mistaken identity. Further, the evidence that would have exculpated her (photographs, fingerprints, and descriptions of both Cleveland and Shirvell) was available at the Genesee County Jail. Cleveland was held at Genessee County Jail for two weeks pursuant to a court order of a $5,000 bond despite her repeated efforts to explain her situation to these defendants. The situation here appears closer to the factual situation of *Gray,* in which a defendant was held for an extended time despite the existence of photographic evidence that would have exculpated her, than to that of *Baker,* in which a defendant was held for a short time on a warrant that appeared to be valid based on the information available at the time.[9] *Gray, supra,* 150 F.3d 579; *Baker, supra,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433. Cleveland's claims

against the individual Genesee Defendants therefore must be presented to a trier of fact to determine if their actions were objective reasonable.

#### 2. Claims Against the City of Detroit and Genesee County

■ A governmental body cannot be held liable merely because it employs a tortfeasor. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A governmental agency may be held liable for violation of an individual's constitutional rights only when the agency, acting through the execution of its policies or practices, directly inflicts the injury. *Id.* A plaintiff must demonstrate (1) that the policy or practice was in fact promulgated by policy making authority, *id.,* (2) that it was unconstitutional on its face or in its application, *Gonzalez v. Ysleta Ind. School District,* 996 F.2d 745 (5th Cir.1993), and (3) that it was the moving force behind the plaintiff's injuries, *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

Cleveland's amended complaint alleges that Detroit and Genesee had policies of ignoring arrestees' claims of mistaken identity and of not comparing their fingerprints to those in the arrest warrant. Detroit and Genesee argue that she has presented no evidence that any policy-making authority authorized a policy of ignoring arrestees' claims of mistaken identity and that she has not shown that it is unconstitutional for police departments to fail to compare the fingerprints of arrestees to those in the arrest warrant. Since Cleveland's motion to amend her complaint is granted in this order, it is premature to

---

9. Here Cleveland was being held pursuant to a court order of a bond, rather than a warrant (as in *Gray* and *Baker* ). Both a warrant and an order setting bond are facially valid orders of commitment from a court. The analysis for mistaken identity claims made by persons detained under warrants therefore also applies to mistaken identity claims made by persons detained on bond orders.

rule on a motion for summary judgment on her § 1983 claims against Detroit and Genesee. These claims therefore continue.

### B. Count Two: Michigan Constitutional Violation

Cleveland has withdrawn her claims for damages under the Michigan Constitution.

### C. Count Three: Gross Negligence

▪▪▪▪ An officer acting, or who reasonably believes that he is acting, within the scope of his authority while engaged in the exercise or discharge of a governmental function is immune from the imposition of tort liability so long as his conduct does not amount to gross negligence that is the proximate cause of the injury or damage. MICH. COMP. LAWS § 691.1407(2). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(2)(c). To hold officers liable, "their gross negligence must be the one most immediate, efficient, and direct cause of the injury or damage, i.e. the proximate cause." *Kruger v. White Lake Twp.*, 250 Mich.App. 622, 648 N.W.2d 660 (2002) (quoting *Robinson v. Detroit*, 462 Mich. 439, 613 N.W.2d 307 (2000) quotation marks omitted). Absent a legal duty to the plaintiff on the part of the officer, a plaintiff's claim fails as a matter of law. *Chivas v. Koehler*, 182 Mich.App. 467, 475, 453 N.W.2d 264 (1990).

Cleveland's gross negligence claims against Dabliz, Davidson, Davis, Turner, and Rice fail as a matter of law. If she cannot show their behavior was objectively unreasonable, *see supra*, she cannot show that it was grossly negligent.

Just as a trier of fact could find that Moore, Brown, Dillard, Heath, Verhelst, and Ninnis were objectively unreasonable in their failure to investigate Cleveland's claim of mistaken identity, a trier of fact could find that same failure grossly negligent. Cleveland's gross negligence claims against Moore, Brown, Dillard, Heath, Verhelst, and Ninnis continue.

### D. Count Four, State Law Torts: Assault, Battery, and False Imprisonment [10]

▪▪▪▪ An assault is (1) an intentional, unlawful threat or offer to do bodily injury by force (2) under circumstances that create a well-founded fear of imminent peril (3) coupled with the ability to carry out the act if not prevented. *Tinkler v. Richter*, 295 Mich. 396, 295 N.W. 201 (1940). A battery is a willful or intentional touching of a person against the person's will. *Id.* The use of force necessary to accomplish an arrest does not constitute assault or battery even where the arrest is subsequently voided. *See Smith v. Michigan*, 122 Mich.App. 340, 344–46, 333 N.W.2d 50 (1983). There is no evidence that anyone used excessive force in Cleveland's arrest or subsequent detention. Cleveland's assault and battery claims against all defendants are therefore DISMISSED.

▪▪▪▪ In order to prove false imprisonment, a plaintiff must prove her arrest was not legal, i.e. that it was without probable cause. *Brewer v. Perrin*, 132 Mich.App. 520, 349 N.W.2d 198, 201 (1984). There is probable cause to arrest when the facts available to the arresting officer at the time of the arrest "would have justified a fair-minded person of average intelligence and judgment in believing that [the arrestee] had committed a felony." *Id.* (internal citations omitted). Here there was probable cause to arrest Cleveland based on her possession of a crack pipe.

---

**10.** Cleveland's complaint includes a claim for malicious prosecution, but she has voluntarily dropped that claim.

 

 Cleveland's continued detention was based on a failure to investigate her identity and the warrant properly, which is similar to a failure to have probable cause to arrest in the first place. Both are premised on the notion that a person may not be held where the arresting or holding officer does not have sufficient reason to detain the person. Here there is evidence that various defendants—Moore, Brown, Dillard, Heath, Verhelst, and Ninnis— should have known that there was insufficient evidence to hold Cleveland and should have initiated her release based on that knowledge. Cleveland's claims against them remain. Her claims against Dabliz, Davidson, Davis, Rice, and Turner fail and are DISMISSED, as there is insufficient evidence to support a claim that they should have known about the mistaken identity and had the responsibility to do anything about it.

### V. Conclusion

Accordingly, Cleveland's motion to file a third amended complaint is GRANTED.

Defendants' motions for summary judgment are GRANTED as to Dabliz, Davidson, Davis, Rice, and Turner. All claims against these defendants are DISMISSED.

Defendants' motions for summary judgment are DENIED as to the City of Detroit and Genesee County. Cleveland's § 1983 claims against these defendants continue.

Defendants' motions for summary judgment are GRANTED IN PART AND DENIED IN PART as to Moore, Brown, Dillard, Heath, Verhelst, and Ninnis. Cleveland's § 1983, gross negligence, and false imprisonment claims against these defendants remain. Her state law claims for assault and battery against these defendants are DISMISSED.

SO ORDERED.