**Claudette HYATT; Alicia Anderson, a minor by her guardian ad litem, Claudette Hyatt; Fabian Anderson, a minor by his guardian ad litem, Claudette Hyatt, Appellants**

v.

**COUNTY OF PASSAIC; Passaic County Prosecutor's Office; Division of Youth and Family Services; James F. Avigliano, individually and in his offi-**

---

cial capacity; Joseph Del Russo, individually and in his official capacity; Christopher Freid, individually and in his official capacity; Susan Bonds, individually and in her official capacity; Betty Simmons, individually and in her official capacity; Giselle Henriquez, individually and in her official capacity; Carlene Clyburn, individually and in her official capacity.

No. 08–3206.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) June 24, 2009.

Opinion filed: July 16, 2009.

Angelo R. Bianchi, Esq., Bloomfield, NJ, for Appellants.

Benjamin Clarke, Esq., Dawn O'Connor, Esq., Decotiis, Fitzpatrick, Cole & Wisler, Teaneck, NJ, Randall B. Weaver, Esq., Office of Attorney General of New Jersey, Trenton, NJ, Albert C. Buglione, Esq., Deyoe, Heissenbuttel & Piekarsky, Wayne, NJ, for Appellee.

Before: BARRY and SMITH, Circuit Judges, and RESTANI,* Judge.

## OPINION

RESTANI, Judge.

Plaintiffs–Appellants ("Appellants") Claudette Hyatt, Alicia Anderson, and Fabian Anderson challenge the District Court's grant of summary judgment on their 42 U.S.C. § 1983 and state law claims in favor of Defendants–Appellees ("Appellees") County of Passaic; Passaic County Prosecutor's Office ("PCPO"); and PCPO officials, Passaic County Prosecutor James Avigliano, Chief Assistant Prosecutor James Del Russo, Assistant Prosecutor Christopher Freid, Detective Susan Bonds, and Giselle Henriquez. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2001, Hyatt's seven-year-old daughter, Alicia Anderson, and seventeen-year-old daughter, Glenise Malcolm, told a pediatrician that their common law uncle, Lavoisier Wallace, had sexually abused them. Hyatt had learned about the abuse and that Anderson was suffering from a vaginal discharge several weeks earlier but was reluctant to report the abuse because of Wallace's relationship with the family. The pediatrician referred the case to the PCPO's Child Abuse Unit and the New Jersey Division of Youth and Family Services ("DYF S"), which opened investigations. Hyatt did not return many of the PCPO's messages, and she told a PCPO detective that her family was pressuring her not to cooperate with the investigation. After Freid explained that he needed to prepare Anderson to testify at Wallace's trial, Hyatt repeatedly told PCPO officials that she would not bring Anderson to the PCPO for trial preparation and that she did not want Anderson to testify.

Del Russo, Freid, and Bonds met in March 2003 and concluded that Wallace likely would be acquitted if Anderson were not prepared for trial and that there was probable cause to believe Hyatt was hindering Wallace's prosecution. On April 2, 2003, after Hyatt had failed to appear at the PCPO as requested, Bonds and two other PCPO employees asked to see Hyatt at her workplace. Bonds told Hyatt that she would be taken to the PCPO and that she had no choice in the matter, although an arrest warrant had not yet issued. At the PCPO Hyatt again refused to make Anderson available for preparation. An arrest warrant issued and Hyatt was charged with unlawful witness tampering with the purpose of hindering Wallace's prosecution in violation of N.J. Stat. Ann. § 2C:29–3(a)(3). The court placed Anderson in the custody of an uncle, who brought Anderson to be prepared for trial on April 7, 2003.

On April 8, 2003, Hyatt requested that the judge in Wallace's case not require Anderson to testify. The judge denied Hyatt's request. Anderson testified, and

* Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

the jury convicted Wallace in September 2003.

In June 2003, Del Russo presented the case against Hyatt to a Grand Jury, which returned an indictment. After Wallace's conviction, Del Russo requested that the court dismiss the indictment against Hyatt.

In April 2004, Appellants sued Appellees in the United States District Court for the District of New Jersey, asserting violation of constitutional rights under 42 U.S.C. § 1983 and state law claims including malicious prosecution, false arrest, and false imprisonment.[1] In March 2008, the District Court granted Appellees' motion for summary judgment, holding that Appellees had Eleventh Amendment, absolute, and qualified immunity and rejecting the state law claims. *Hyatt v. County of Passaic*, No. 04–CV–1545, 2008 WL 839556, at *7–14 (D.N.J. Mar. 27, 2008). In April 2008, Appellants filed a motion for reconsideration, which the District Court denied. *Hyatt v. County of Passaic*, No. 04–CV–1545, 2008 WL 2668939 (D.N.J. June 27, 2008). Appellants now appeal.

## DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment *de novo* and affirm if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir.2005).

### I. Eleventh Amendment Immunity

Appellants argue that Eleventh Amendment immunity does not apply to the PCPO and PCPO officials and that even if it applies, it was waived. Appellants' arguments fail.

Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "[N]either a State nor its officials acting in their official capacities" may be sued for monetary relief under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Eleventh Amendment immunity applies to state entities and officials if "the state is the real, substantial party in interest." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (internal quotation marks and citation omitted). In determining whether the State is the "real" party in interest, we consider: "(1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy." *Haybarger v. Lawrence County Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir.2008) (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989)).

Under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, "they act as agents of the State," and the State must indemnify a judgment arising from their conduct. *Wright v. State*, 169 N.J. 422, 778 A.2d 443, 461–62, 464 (2001). The County is liable, however, when prosecutorial defendants "perform administrative tasks unrelated to their strictly prosecutorial functions, such as ... personnel decisions." *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir.1996). Training and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks con-

---

1. Hyatt also sued the DYFS and DYFS employees Betty Simmons and Carlene Clyburn. They were dismissed from the proceedings in February 2006 after the State of New Jersey settled with Appellants on their behalf.

cerning personnel. See *Van de Kamp v. Goldstein,* —— U.S. ——, 129 S.Ct. 855, 861–62, 172 L.Ed.2d 706 (2009).

■ Here, because Appellees' procedures, policy, and training regarding sexually abused child witnesses required legal knowledge and discretion and therefore was related to their prosecutorial function, the State would be liable for any judgment.[2] Further, under New Jersey law, the PCPO "remains at all times subject to the supervision and supersession power of the Attorney General" when performing its prosecutorial function and is not autonomous from the State. *Wright,* 778 A.2d at 462.[3] Accordingly, because the PCPO and its officials acted in their official capacities as agents of the State, they qualify for Eleventh Amendment immunity.[4]

■ Appellants nevertheless argue that the New Jersey Tort Claims Act ("TCA") waived Eleventh Amendment immunity. States may waive immunity by unequivocally expressing consent to suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The TCA, which allows suits against public entities and their employees in state courts, does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver. *See* N.J. Stat. Ann. § 59:2–2(a).[5]

Appellants also argue that the State of New Jersey waived Eleventh Amendment immunity for Appellees through its litigation conduct. The Eleventh Amendment, however, can be raised at any time and is not waived simply by defending a claim on its merits. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 131 F.3d 353, 365 (3d Cir.1997), *aff'd* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Here, the State simply defended claims on the merits. Although the State denied Appellees' cross-claims for indemnification in its answer and asserted a cross-claim against Appellees for indemnification and contribution, the State is still liable for the PCPO officials' conduct in their official capacities. *See Wright,* 778 A.2d at 464–65. Further, the State's settlement on behalf of the DYFS, Simmons, and Clyburn, did not unequivocally express its consent to suit against the PCPO and its officials.

## II. Absolute Immunity

■ In any event, the PCPO officials are absolutely immune for their actions. Prosecutors have absolute immunity from suit under § 1983 when carrying out prosecutorial functions. *See Imbler v. Pachtman,* 424 U.S. 409, 427–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). As the decision to charge a suspect is one of the primary tasks of a prosecutor, Del Russo and Freid have absolute immunity for charging and indicting Hyatt. *See Kulwicki v. Dawson,* 969 F.2d 1454, 1463–64 (3d Cir.1992) (hold-

---

**2.** Although the Attorney General may refuse indemnification if the act was the result of "willful misconduct or actual malice," N.J. Stat. Ann. § 59:10A–2, Appellants offer no evidence that Appellees' alleged misconduct was willful or the result of actual malice.

**3.** Because the actions of the PCPO and its officials were prosecutorial, and the State would be liable for those actions, the County is not liable. *See Wright,* 778 A.2d at 462.

**4.** Avigliano and Henriquez are not liable because they had no personal involvement in

arresting, charging, or indicting Hyatt. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) ("A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs.").

**5.** The statute provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." *Id.*

ing that a prosecutor is absolutely immune when initiating a prosecution).[6] Detective Bonds has absolute immunity for her investigative assistance relating to Hyatt's prosecution. *See Davis v. Grusemeyer*, 996 F.2d 617, 632 (3d Cir.1993) (holding that absolute immunity extends to a prosecutor's investigator who performs "investigative work in connection with a criminal prosecution"), *abrogated on other grounds by Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir.1998). The PCPO officials also have absolute immunity for their training decisions, policies, and procedures regarding the existence of probable cause and regarding child witnesses of sexual abuse, which involve legal knowledge and discretion. *See Van de Kamp*, —— U.S. at ——, 129 S.Ct. at 862. Accordingly, absolute immunity shields the PCPO officials from suit.[7]

### III. State Law Claims

 Appellants' claims for malicious prosecution, false arrest, and false imprisonment also fail. To establish malicious prosecution, a plaintiff must show that: "(1) a criminal action was instituted by th[e] defendant against th[e] plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *LoBion-*

*do v. Schwartz*, 199 N.J. 62, 970 A.2d 1007, 1022 (2009). Appellees had probable cause to charge Hyatt with hindering prosecution based on her conduct during the investigation and preparation for prosecution of Wallace, and Appellants cannot show that Appellees acted with malice. Appellants thus cannot establish a malicious prosecution claim.

Appellants' false arrest and false imprisonment claims are procedurally barred. Under the TCA, a plaintiff must file a notice of claim within ninety days after the accrual of a claim, N.J. Stat. Ann. § 59:8–8, or seek leave of the court "within one year after the accrual of [the] claim," *id.* § 59:8–9. False arrest and false imprisonment claims accrue at the time of the detention. *See Bauer v. Borough of Cliffside Park*, 225 N.J.Super. 38, 541 A.2d 719, 723 (N.J.Super.Ct.App.Div.1988). Here, Hyatt was arrested on April 2, 2003, and she filed a notice of claim on December 26, 2003, without ever seeking leave of court.[8] Appellants therefore may not assert any false arrest or false imprisonment claims.[9] Accordingly, we will affirm the Order of the District Court.

---

**6.** Although Freid mistakenly informed the Deputy Attorney General representing the DYFS that Hyatt's bail had a "no victim contact" condition before her post-arrest custody hearing, the judge in that hearing never ruled on the issue, and no harm arose from Freid's conduct.

**7.** Alternatively, Appellees have qualified immunity. Officials may not be sued under § 1983 based on an arrest where "officers of reasonable competence could disagree" on whether there is probable cause. *Malley v. Briggs*, 475 U.S. 335, 340–41, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Appellees had probable cause to believe Hyatt was hindering Wallace's prosecution because Hyatt repeatedly

refused to produce Anderson for witness preparation and attempted to block Anderson from testifying, even though Hyatt knew that she could not block Anderson from testifying under state law.

**8.** Although Appellants correctly assert that the TCA does not apply to their claims that Hyatt's arrest and imprisonment violated their constitutional rights, Eleventh Amendment and absolute immunity bar their federal constitutional claims.

**9.** Appellants do not challenge the District Court's dismissal of the state law claims against Henriquez.