Earl D. HICKSON, Plaintiff,

v.

MARINA ASSOCIATES d/b/a Harrah's Casino Hotel Atlantic City i/s/h/a Harrah's Hotel and Casino a/k/a Harrah's Atlantic City, Alexander Lovas, Vance Thompson, Anna Haag, Josh Lichtblau, Mark Kosko, State of N.J. Division of Gaming Enforcement, George Morton, Esq., Defendants.

Civil Action No. 08–cv–2407 (NLH)(KMW).

United States District Court, D. New Jersey.

Sept. 27, 2010.

---

Earl D. Hickson, Atlantic City, N.J., pro se.

Christopher C. Mauro, Esq., Camacho Mauro Mulholland, L.L.P., New York, N.Y., for Defendants Marina Associates, Harrah's Hotel and Casino, Anna Haag, and Vance Thompson.

Kathleen M. Bartus, Esq., State of New Jersey Department of Law and Public Safety, Richard J. Hughes Justice Complex, Trenton, N.J., for Defendants State of New Jersey Division of Gaming Enforcement, Josh Lichtblau, Mark Kosko, and George Morton, Esq.

## OPINION

HILLMAN, District Judge.

Plaintiff, Earl Hickson, has brought suit against defendants, Marina Associates, doing business as Harrah's Casino Hotel Atlantic City (or, "Harrah's Hotel and Casino" or the "Casino"), Alexander Lovas, Vance Thompson, and Anne Haag (collectively, "Casino defendants"),[1] and the New Jersey Division of Gaming Enforcement (or, the "DGE"), Josh Lichtblau, Mark Kosko, and George Morton (collectively, "State defendants"). Among other things, Hickson alleges several violations of his civil rights pursuant to federal and state law. Presently, Hickson has moved for summary judgment. The Casino defendants and the State defendants, in turn, have cross-moved for summary judgment, respectively.

---

**1.** Alexander Lovas has not appeared in this case and is not represented by counsel for the other Casino defendants. Nevertheless, for the sake of clarity and simplicity, "Casino defendants" will include Lovas, unless otherwise specified.

For the reasons expressed below, the State defendants' Motion for Summary Judgment is granted in part and denied in part. The Casino defendants' Motion for Summary Judgment is also granted in part and denied in part. Conversely, Hickson's Motion for Summary Judgment and "Renewed/Supplemental" Motion for Summary Judgment are both denied. Lastly, the Court orders Hickson to show cause why it should continue to exercise supplemental jurisdiction over his remaining state law claims.

## I. JURISDICTION

Plaintiff has brought federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as claims under New Jersey law. This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over plaintiff's related state law claims under 28 U.S.C. § 1367.

## II. BACKGROUND

On May 15, 2006, Hickson visited and gambled at the Harrah's Hotel and Casino. During the afternoon, he approached a slot machine which appeared to be unoccupied but had credits remaining on it. Hickson inserted his money voucher and played the machine several times before cashing out and leaving it. As he walked away, Sharon Fedaczynsky, another casino patron, asked him if he had taken her money that she had been using at the same slot machine. Hickson showed Fedaczynsky his two vouchers, one of which was blank and the other worth fifteen cents. Fedaczynsky claimed that she had been playing with about $140 at the slot machine. Hickson told her to find a casino attendant while he went to call his friend.[2]

While near one of the casino's telephones, Hickson was approached by casino security personnel. Two of the security personnel, Alexander Lovas, a security shift manager, and Vance Thompson, a security officer, instructed Hickson to get off the phone and reported that a camera captured him stealing Fedaczynsky's money. They demanded that Hickson turn over the voucher. Hickson denied the allegation and asked for the security guards' names, which they refused to provide. At no point did Hickson tell the officials that he found the credits on an unoccupied slot machine and deemed them to be abandoned. Instead, he requested that they contact the police to help resolve the matter. Thereafter, Officer Mark Kosko of the DGE arrived and reiterated to Hickson that whatever occurred is on a surveillance tape. Again, Hickson denied any wrongdoing.

The group of men proceeded to a room where Hickson and several security guards waited while Kosko went to speak with Fedaczynsky and view the surveillance tape as provided by Anna Haag, a casino surveillance officer. According to the complaint, after Kosko left the room, Hickson was surrounded by security guards who recounted to one another physical confrontations they had had with black people. Upon returning to the room, Kosko asked Hickson to turn over the ticket. In response, Hickson displayed the blank voucher he had previously shown Fedaczynsky. Against Hickson's wishes, Kosko then searched Hickson's bag but found nothing.

Soon thereafter, Kosko informed Hickson that there was a warrant for his arrest for violation of probation. Hickson denied that he was ever on probation or that a

---

**2.** Fedaczynsky testified that Hickson had walked away quickly from the slot machine and that she chased after him. She also recalled that Hickson did not tell her anything about the credits she had left on the machine except that he did not have them. Hickson disputes these recounts.

valid warrant was issued for his arrest.[3] Nevertheless, Kosko handcuffed Hickson, placed him under arrest, and escorted him to the county custodial facility. Hickson was detained for eleven days before being released.

Hickson was charged with the theft of another casino patron's slot voucher. On or around July 27, 2007, Hickson appeared before the Atlantic City Municipal Court. The prosecution, however, was unprepared to proceed with the trial as scheduled. Hickson asked that the case against him be dismissed. The municipal judge granted Hickson's request.

In May 2008, Hickson filed his original complaint in this Court. Subsequently, he amended his complaint multiple times. Hickson finally filed his third amended complaint in December 2009. That same month, he filed his Motion for Summary Judgment. In March 2010, he submitted a "Renewed/Supplemental" Motion for Summary Judgment. The Casino defendants and the State defendants cross-moved for summary judgment in April 2010, respectively.[4]

## III. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the

---

**3.** In connection with his purported violation of probation, Hickson alleges that George Morton appeared in New Jersey state court on his behalf and improperly entered a guilty plea to that charge. Prior to the current set of circumstances, Morton, a lawyer, was appointed as standby counsel for Hickson during a previous criminal charge adjudicated in New Jersey state court in 2003.

**4.** Most recently, on August 25, 2010, Hickson filed a verified complaint and "Order to Show Cause with Preliminary Injunction." The submission appears to reiterate the allegations and arguments already propounded by Hickson in his complaints, his "Brief in Support of Complaint," his motions for summary judgment, and his oppositions to defendants' motions. It is worth noting, however, that the operative complaint in this case remains Hickson's third amended complaint. Nevertheless, this latest submission does not alter the Court's conclusions in this Opinion. The

Court further stresses that, even accepting Hickson's averments as if they were set forth in an affidavit, only those facts to which Hickson has personal knowledge may be considered as true. *See* Fed.R.Civ.P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); *Mosley v. City of Pittsburgh Pub. Sch. Dist.,* 2009 WL 2948519, at *1, 2009 U.S. Dist. LEXIS 81174, at *4 (W.D.Pa. Sept. 8, 2009) (explaining that "[s]tatements in affidavits made only on belief or on information and belief may not be considered in support of or in opposition to summary judgment" and that "courts routinely grant motions to strike affidavits that are based upon 'belief' or 'information and belief,' or which contain conclusory language, vague assertions, gross speculation and inferences" (citation omitted)).

evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *see Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n. 2 (3d Cir.2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548)). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001).

## B. Defendants' Motions for Summary Judgment

### 1. Sovereign Immunity

The State argues that this Court lacks jurisdiction to hear any claims against the New Jersey Division of Gaming Enforcement by virtue of the doctrine of sovereign immunity. In addition, the State contends that a state and its agencies do not fall within the purview of Section 1983. Hickson does not proffer any reasoned argument in response to the State's position.[5]

■ "Under the Eleventh Amendment, 'an unconsenting State is immune from suits brought in federal courts by her own citizens.'"[6] *Hyatt v. County of Passaic*, 340 Fed.Appx. 833, 836 (3d Cir.2009) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). This proscription extends to related state law claims as well. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540–41, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002) (stating that "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court").

It appears undisputed that the DGE is an arm or alter ego of the State of New Jersey and, thus, may invoke the principles of sovereign immunity. See *Rudolph v. Adamar of N.J., Inc.*, 153 F.Supp.2d 528, 548, 551 (D.N.J.2001) (holding that the New Jersey Casino Control Commission, a "sister agency" of the DGE, "is an alter ego of the State of New Jersey and is therefore entitled to Eleventh Amendment

---

**5.** In fact, in his opposition to the State defendants' motion for summary judgment, Hickson iterates that he is suing Lichtblau, Kosko, and Morton in their individual capacities.

**6.** The Eleventh Amendment to the United States Constitution reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State." In spite of its unambiguous language, "[t]he Eleventh Amendment not only prohibits suits against a state by citizens of other states, but also prohibits suits against a state by its own citizens, as well as suits against a state agency or department." *Russo v. Ryerson*, 2006 WL 477006, at *11, 2006 U.S. Dist. LEXIS 10447, at *33 (D.N.J. Feb. 27, 2006) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

immunity"); *Stillman v. N.J.*, 1989 WL 5817, at \*2, 1989 U.S. Dist. LEXIS 854, at \*6 (D.N.J. Jan. 24, 1989) (holding that, "[w]ithout question, the New Jersey Department of Law and Public Safety is nothing more than the alter ego of the state" and is shielded by sovereign immunity).[7] Further, there is no suggestion that the State has waived its sovereign immunity or that any law implicated in this case has expressly abrogated that immunity.

■■■ In fact, neither Section 1983 or 1981 presents a cause of action against a state or its officials who act in their official capacities. See *Hyatt*, 340 Fed.Appx. at 836 (" '[N]either a State nor its officials acting in their official capacities' may be sued for monetary relief under § 1983." (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989))); *Dianese, Inc. v. Pennsylvania*, 2001 WL 876919, at \*1, 2001 U.S. Dist. LEXIS 11491, at \*\*3–4 (E.D.Pa. Apr. 17, 2001) ("And Congress did not abrogate states' sovereign immunity when it passed 42 U.S.C. § 1981.").

■■ Therefore, because of the principles of sovereign immunity, Hickson's claims against the DGE and any claims against Lichtblau, Kosko, or Morton in their official capacities are dismissed.[8]

**2. Section 1983 Claims Alleging Malicious Prosecution, False Arrest/Imprisonment, and Abuse of Process Against State Defendants**

The State argues that Lichtblau, Kosko, and Morton are entitled to qualified immunity with respect to Hickson's Section 1983 claims insofar as they committed no constitutional violations. In response, Hickson opines that given the close of discovery and that the case has advanced to the summary judgment phase of litigation, the defense of qualified immunity is untimely and precluded.

■ " 'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Montanez v. Thompson*, 603 F.3d 243, 249–50 (3d Cir.2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)). Qualified immunity may shield a government official from liability regardless of whether the official's conduct constituted a mistake of law, of fact, or a combination of the two. *Id.* at 250. To determine the applicability of qualified immunity, a court must undertake a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.[9]

---

7. The DGE is a division of the New Jersey Department of Law and Public Safety. *See Rudolph*, 153 F.Supp.2d at 548.

8. Sovereign immunity notwithstanding, the Court recognizes that a plaintiff may sue a state officer in his or her official capacity for prospective injunctive relief for violations of federal law. *Figueroa v. City of Camden*, 580 F.Supp.2d 390, 398 (D.N.J.2008). In this case, however, Hickson does not seek any such remedy from the named state officials, or at least none that the Court may grant.

9. Although the aforementioned sequence of the qualified immunity analysis is often appropriate, it is not rigid and inflexible; rather, a court may exercise its discretion in deciding

*Id.* (citing *Pearson,* 129 S.Ct. at 815–16). "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir.1997). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions."[10] *Id.* (citation omitted).

■■■ At the outset, the Court looks to determine whether the State defendants' actions violated a clearly established right as alleged by Hickson. First, Hickson avers that the State defendants maliciously prosecuted him.

To prove malicious prosecution under Section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr,* 477 F.3d 75, 81–82 (3d Cir.2007) (footnote omitted). Second, Hickson claims that the State defendants

falsely arrested and imprisoned him. To state a false arrest or false imprisonment claim under the Fourth Amendment and pursuant to Section 1983 requires that the plaintiff show that "the arresting officer lacked probable cause to make the arrest." *Garcia v. County of Bucks,* 155 F.Supp.2d 259, 265 (E.D.Pa.2001). "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Id.* (citing *Sharrar v. Felsing,* 128 F.3d 810, 817–18 (3d Cir.1997)). Although typically reserved for the jury's fact-finding function, the existence of probable cause may be affirmed as a matter of law "if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Sherwood,* 113 F.3d at 401; *see Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (stating that the issue of immunity should be decided by the court prior to trial and turns upon the reasonableness of an officer's actions, and not whether a more reasonable interpretation exists).

■ Here, even if the State defendants are responsible for initiating a criminal proceeding against Hickson, probable cause existed to justify Hickson's arrest. To begin, there is no dispute that Sharon Fedaczynsky accused Hickson of taking the money she had been playing and won at a slot machine. During her deposition, Fedaczynsky testified that she had won over a hundred dollars on the slot machine and while she went to tell her husband,

which of the two prongs should be addressed first in light of a case's particular circumstances. *Montanez,* 603 F.3d at 250 (quoting *Pearson,* 129 S.Ct. at 818).

**10.** Consistent with Hickson's argument, it is true that the issue of immunity "ordinarily should be decided by the court long before trial." *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). But,

contrary to Hickson's understanding, qualified immunity may be decided as part of a motion for summary judgment. *See id.* at 226–29, 112 S.Ct. 534 (granting defendants' motion for summary judgment on the grounds of qualified immunity). Hence, no matter of timeliness or waiver hinders the State defendants from asserting qualified immunity at this juncture.

Hickson took the money from the machine and walked away. Kosko was aware of these allegations soon after he arrived on the scene and found that Hickson had already been detained by casino security personnel for allegedly taking another patron's slot voucher.

■ According to his investigation report,[11] Kosko observed video footage depicting Hickson's removal of a voucher from the slot machine at issue and, thereafter, a conversation between Hickson and Fedaczynsky. During Kosko's interview with Fedaczynsky, the report states, Fedaczynsky recounted that she had walked away from the slot machine, leaving behind about $142 in credits, to talk with her husband, but noticed Hickson standing in front of her machine; when she returned to the machine, the credits had been cashed out and the voucher removed. Further, Kosko was informed by a slot manager that Fedaczynsky's casino players' card, known as a "Total Rewards Card," was in the machine at the time when Hickson removed the voucher.[12] Based on these facts known to him at the time, Kosko had probable cause to believe that Hickson may have stolen Fedaczynsky's voucher. Whether Hickson actually stole the credits, of course, is irrelevant to the question of probable cause. Only that Kosko had probable cause to detain or arrest Hickson is relevant to this analysis. *See Lynn v. Christner,* 184 Fed.Appx. 180, 183–84 (3d Cir.2006) ("The proper inquiry in a 1983 claim based on false arrest . . . is

not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." (citation and internal quotation marks omitted)).

Alternatively, even in the absence of probable cause regarding Hickson's alleged theft, Kosko still would be immunized because his actions were objectively reasonable in light of the circumstances. Along with the allegations that Hickson stole Fedaczynsky's credits, Kosko had learned and reasonably relied on the belief that Hickson had an outstanding warrant. Although Hickson challenges the validity of the warrant, Kosko was entitled to rely on it in good faith. *See Berg v. County of Allegheny,* 219 F.3d 261, 273 (3d Cir.2000) ("[W]e have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant."); *Tolan v. Fedorchak,* 2009 WL 3128431, at *6, 2009 U.S. Dist. LEXIS 89907, at **17–18 (D.N.J. Sept. 28, 2009) (granting defendants' motion for summary judgment against claim of unlawful arrest because officer's reliance on warrant was objectively reasonable). Hickson does not raise a genuine issue of material fact on any of these points, including the reasonableness of Kosko's reliance on the warrant.

Therefore, given the totality of the circumstances, including the surveillance footage, Fedaczynsky's account of the events, and the outstanding warrant, Kos-

---

11. The Court may consider Kosko's investigation report as part of the record. *See Clark v. Clabaugh,* 20 F.3d 1290, 1294 (3d Cir.1994) (holding that "the district court exercised sound discretion in admitting for consideration" an unsworn police report). Although Hickson disagrees with the conclusions drawn therein, the report essentially repeats facts already alleged or established in the case, *i.e.,* Fedaczynsky's allegations and Hickson's outstanding warrant, and serves princi-

pally to show Kosko's awareness of those facts—regardless of their ultimate veracity—at the time when the events of this case were still unfolding.

12. During her deposition, Fedaczynsky confirmed that she left her Total Rewards Card in the slot machine and may have left her soda on or near the machine. Hickson contests these putative facts.

ko had probable cause to believe that Hickson had committed an unlawful offense.[13] Moreover, notwithstanding the analysis heretofore, the fact remains that Hickson has failed to carry his burden of proof at this stage of litigation.[14] Apart from his allegations and conclusory remarks, he has not presented any definitive evidence that undermines the State defendants' arguments and satisfies the burden ascribed to him.[15] *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (holding that "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," thereby "necessarily render[ing] all other facts immaterial" (internal quotation marks omitted)); *see also Exantus v. Harbor Bar & Brasserie Rest.*, 386 Fed.Appx. 352, 353–54 (3d Cir.2010) (noting that "a party opposing summary judgment 'must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue'" (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.2005))).

Other than Kosko, it appears that Hickson also charges Lichtblau with malicious prosecution and false arrest/imprisonment and may also include Morton as part of those broad allegations. However, based on Hickson's averments and evidence, it is unclear how Lichtblau or Morton could be liable for either purported offense. Assuming *arguendo* some unlawful misconduct by Kosko, there is simply no evidence that Lichtblau, the director of the DGE, knew of or in any way tacitly approved or acquiesced to such misconduct, or otherwise breached a duty inherent to his position; in other words, no tangible connection or affirmative link between Lichtblau and the alleged wrongdoing has been shown. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."). Further, Morton's alleged offense seems to concern his representation of Hickson in a criminal matter dating back to 2003 and the charge of violation of probation for which Kosko arrested him. However, except for Hickson's general accusations, seemingly predicated upon an alleged conspiracy to falsify records and criminalize Hickson, nothing in the record suffices to show that Morton committed any wrongdoing warranting any of the Section 1983 causes of action set forth by Hickson. Nor does any affirmative evidence retort Morton's certification wherein he swears that he did not enter a guilty plea on Hickson's behalf or perform any legal work for him since 2003.

Furthermore, Hickson also alleges abuse of process.

A section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law. The crux of this action is

---

**13.** Additionally, in his deposition, Hickson admitted that he had not informed Kosko or the casino security guards that he had considered any credits from the slot machine abandoned.

**14.** For example, with respect to the malicious prosecution claim, Hickson presents no evidence that the State defendants acted maliciously or with ill intent, a requisite element to proceed and prevail on this cause of action.

**15.** Pursuant to the Magistrate Judge's Order dated December 15, 2009, all pretrial factual discovery in this case was to be completed by February 26, 2010, and all dispositive motions were to be submitted by April 30, 2010. Accordingly, at this time Hickson should be in possession of whatever evidence is necessary to defeat defendants' motions for summary judgment.

the perversion of the legal process to achieve an objective other than its intended purpose. When process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained. To establish such a claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.

*Ference v. Twp. of Hamilton,* 538 F.Supp.2d 785, 798 (D.N.J.2008) (citations, quotation marks, and brackets omitted). At this stage of litigation, Hickson has not demonstrated the malignant action or intent necessary to sustain this claim. Again, he relies entirely on speculation and self-conceived conclusions, and not personal knowledge of facts or events.

For the reasons stated above, and because the State defendants did not violate his constitutional rights, summary judgment must be awarded to the State defendants with respect to Hickson's Section 1983 claims of malicious prosecution, false arrest/imprisonment, and abuse of process.[16]

## 3. Section 1983 Claims Alleging Malicious Prosecution, False Arrest/Imprisonment, and Abuse of Process Against Casino Defendants[17]

The Casino defendants argue that Hickson has failed to prove the elements of any Section 1983 claim. With respect to the malicious prosecution claim, they contend that they did not initiate a criminal proceeding against Hickson, let alone with malicious intent and without probable cause. The existence of probable cause, say the Casino defendants, also dooms his false arrest/imprisonment claim. Further, the Casino defendants assert that Hickson has not shown the ulterior motive or illegitimate actions necessary to succeed on his abuse of process claim. Hickson generally disagrees with the Casino defendants' positions.[18] More specifically, from what the Court can decipher, Hickson contends, among his many assertions, that the Casino defendants' actions exceeded the scope of their authority and were unjustified.

16. The State defendants also contend that Hickson cannot recover punitive damages under Section 1983 because he cannot demonstrate the ill intent necessary to trigger that remedy. Having concluded altogether that Hickson cannot sustain his Section 1983 claims, the Court agrees that no punitive damages—or, for that matter, any damages—could be awarded under Section 1983 in this case.

17. The Court recognizes that Alexander Lovas is named as a defendant in this case, but has not entered an appearance and is not represented by the Casino defendants' counsel. However, virtually all of the facts or claims directed at Lovas appear to mirror the same facts and claims directed at Vance Thompson.

Therefore, the Court concludes that, without any further evidence concerning and distinguishing Lovas, the same conclusions drawn as to Thompson's liability must also be drawn as to Lovas's liability. Therefore, because his actions, and the legal consequences thereof, appear to be entirely intertwined with those of Thompson and the Casino, the viability of Hickson's case against Lovas will also be evaluated herein. The parties should have notice of this approach, and should suffer no prejudice as a result, given the close connection between the facts and allegations involving Lovas and Thompson and the fact that both parties refer to Lovas in their submissions.

18. The precise contours of Hickson's arguments against the Casino defendants' motion are unclear. In his opposition to the motion, Hickson challenges the Casino defendants' undisputed facts, reiterates his own allegations, and cites to numerous cases, statutes, and regulations. From the Court's reading, however, none of Hickson's counter-arguments directly addresses or refutes the Casino defendants' assertions that he has not presented sufficient evidence to support his claims.

For reasons similar to those stated above, Hickson cannot maintain his Section 1983 malicious prosecution and false arrest/imprisonment claims against the Casino defendants. Lovas and Thompson had probable cause to detain and question Hickson, as illustrated by Fedaczynsky's deposition testimony. Fedaczynsky testified that she told the casino security officers that Hickson had taken her credits from the slot machine. *See Lynn,* 184 Fed.Appx. at 184 (affirming dismissal of false arrest/imprisonment and malicious prosecution claims because victim's identification of plaintiff as alleged robber provided probable cause for officers to arrest plaintiff); *Petaccio v. Davis,* 76 Fed.Appx. 442, 445 (3d Cir.2003) ("A victim's identification of a party as the perpetrator may validly provide probable cause to charge that party."). Further, Hickson admitted as part of his deposition that he did not inform the security officers that he considered the slot machine at issue, or the credits therein, abandoned. Consequently, Lovas and Thompson reasonably acted on information provided to them by the alleged victim and detained Hickson pending a further investigation by a DGE officer.

Moreover, the Court finds that Hickson does not proffer any sufficient evidence to support his claims.[19] Apart from his allegations and conclusory remarks, the record is entirely devoid of any evidence that raises a genuine issue of material fact as to whether any of the defendants acted with probable cause or impermissible intent. Hickson presents photographic images, captured from the casino's surveillance cameras, depicting his interaction with the slot machine, Fedaczynsky, and casino personnel. However, these images, and Hickson's explications thereof, do not impugn the reasonableness of defendants' actions in light of Fedaczynsky's allegations. Nor does Hickson submit any evidence that creates a genuine issue of material fact as to Anna Haag and her alleged involvement in this episode.

Most notably, in support of his claim, Hickson relies on *Barletta v. Golden Nugget Hotel Casino,* 580 F.Supp. 614 (D.N.J. 1984), for the proposition that a New Jersey casino security officer exceeds his authority and commits a false arrest when he detains a casino patron for an unlawful activity other than cheating and swindling, *i.e.,* unlawful activities that do not fall within the statutory boundaries of the officer's power and responsibility. However, *Barletta* is inapposite to the present matter insofar as it involved a state law claim for false arrest, and not a claim under Section 1983. Whereas a Section 1983 cause of action for false arrest/imprisonment requires the absence of probable cause, New Jersey's analogue is arguably more expansive, attaching liability to a defendant that, even with probable cause, otherwise lacks legal authority or justification for his or her actions. *See Leang v. Jersey City Bd. of Educ.,* 198 N.J. 557, 969 A.2d 1097, 1117 (2009) (explaining that under New Jersey law, the tort of false imprisonment requires "lack of proper legal authority or legal justification" (citation and internal quotation marks omitted)). More to the point, whether a defendant lacks proper authority or justification under New Jersey law to effectuate an arrest necessitates a consideration of substantive New Jersey law. But the current state of New Jersey law need not dictate the substance of a Section 1983 claim and whether a defendant acted reasonably in accordance with the Fourth Amendment. *See Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995) ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is

---

**19.** Again, with respect to the malicious prosecution claim, Hickson presents no evidence illustrating that the Casino defendants acted maliciously or with ill intent.

grounded in the Fourth Amendment's guarantee against unreasonable seizures.").

Moreover, only a state actor may be subject to a Section 1983 cause of action. *Pugh v. Downs,* 641 F.Supp.2d 468, 475 (E.D.Pa.2009) (holding that casino security officer was not a state actor for purposes of Section 1983 where he allegedly acted in concert with police to violate a casino patron's rights because nothing suggested that a preexisting arrangement existed whereby the police officer's judgment to act was substituted by that of the casino security officer); *Lewis v. J.C. Penney Co.,* 948 F.Supp. 367, 373 (D.Del.1996) (granting summary judgment to defendants because security officials for commercial establishment were not state actors for purposes of Section 1983 where they merely detained suspected shoplifters until the police arrived at the scene); *Shannon v. Spectaguard, Inc.,* 1995 WL 322650, at *3–4, 1995 U.S. Dist. LEXIS 7075, at **11–12 (E.D.Pa. May 24, 1995) (granting summary judgment to defendants because plaintiff failed to proffer any evidence demonstrating that security guards conspired with police and therefore constituted state actors); *see also Doug Grant v. Greate Bay Casino Corp.,* 232 F.3d 173, 189 (3d Cir.2000) (concluding that allegations of constitutional violations under Section 1983 against casinos are insufficient because "[s]tate regulation and the [Casino Control Commission's] authorization of casino activities do not transform the casinos into state actors"). Apart from his generalized averments and allegations of conspiracy—which, as will be explained, fail as a matter of law at the summary judgment stage—no evidence demonstrates that the Casino defendants were state actors and are subject to Section 1983. On the contrary, it appears more likely that, while investigating the accusations surrounding Hickson and waiting for Kosko to arrive, the Casino defendants were mere private actors performing their services for their private employer, the Casino.

The Court need not expressly address the matter of state action. Rather, the matter simply serves to illustrate a distinction between *Barletta* and the case at bar. The fact remains that, assuming state action, the Casino defendants had probable cause to detain Hickson, and as a result, they cannot be held liable for malicious prosecution or false arrest/imprisonment under Section 1983. Whether they exceeded their statutory authority as private actors and violated New Jersey's common law, is another question that the Court need not address, as explained *supra.*

With respect to his claim for abuse of process, defendants again must prevail. As articulated above, Hickson presents no evidence, other than broad accusations devoid of personal knowledge, to demonstrate the requisite intent or action to sustain that cause of action under Section 1983.

Therefore, for the reasons stated above, including the existence of probable cause and the absence of any evidence to raise a genuine issue of material fact, summary judgment must be awarded to the Casino defendants with respect to Hickson's Section 1983 malicious prosecution, false arrest/imprisonment, and abuse of process claims.

### 4. 42 U.S.C. § 1981

Defendants argue that Hickson's Section 1981 claim fails because he has not demonstrated that he was deprived of any right protected or guaranteed by the statute.[20]

---

**20.** In defense of his claim, Hickson appears to rely on the fact that the State defendants did not oppose or object to those facts and arguments set forth in his "Brief in Support of Complaint." Hickson also articulates the Third Circuit jury instructions for Section

Hickson contends that he lost the benefit of the abandoned credits as a result of defendants' actions.

 42 U.S.C. § 1981 provides:
(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To establish a cause of action under Section 1981, plaintiffs must demonstrate that (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of race; and discrimination concerned a statutorily enumerated activity, such as the rights to make and enforce contracts or to purchase property. *Bailey v. Harleysville Nat'l Bank & Trust Co.,* 2005 WL 2012024, at *4–5, 2005 U.S. Dist. LEXIS 17527, at **13–14 (E.D.Pa. Aug. 22, 2005); *Cedeno v. Wal–Mart Stores, Inc.,* 1999 WL 1129638, at *2 n. 7, 1999 U.S. Dist. LEXIS 18851, at *6 n. 7 (E.D.Pa. Nov. 30, 1999) (citations omitted). If a plaintiff articulates a *prima facie* claim, the defendant may assert legitimate,

non-discriminatory reasons for its action. *Bailey,* 2005 WL 2012024, at *5, 2005 U.S. Dist. LEXIS 17527, at *14. The plaintiff then must show that the defendant's reasons constituted pretext. *Id.*

 The Court agrees that there is no evidence that defendants intentionally discriminated against Hickson in relation to a statutorily enumerated activity. Simply put, Hickson does not sufficiently allege or prove that, on the basis of race, he was deprived of a right to make or enforce a contract, to acquire and protect property, or any other right or activity associated therewith, as prescribed in Section 1981. As mentioned above, Hickson testified that he never informed defendants or Fedaczynsky that he found a voucher which he deemed abandoned. Thus, there is no genuine issue of material fact that defendants, relying on Fedaczynsky's allegations and unaware of Hickson's justification for taking the voucher, intended to deprive him of a right.

 Even if the Court were to accept that Hickson was denied the right to enter into or enforce a contract, his Section 1981 claim must fail. Aside from some vague exchanges that are attributed generally to casino security personnel, nothing in the record suggests that defendants mistreated Hickson on account of his race.[21]

1981 and Title VII disparate treatment causes of action. The import of these assertions is not entirely clear but certainly unpersuasive in light of the following analysis.

**21.** Being an African–American, Hickson qualifies as a racial minority. However, the only reference to race in this case is Hickson's averment in his complaint that during the time he was detained, several casino security officers attempted to intimidate him by recalling past incidents in which they physically confronted other black people. Notwithstanding the other deficiencies with his cause of action, this allegation alone does not save Hickson's Section 1981 claim. First, these

stray remarks are presented without much detail. Second, it is unclear whether any of these statements are attributable to any of the named defendants. Third, the stray remarks do not obviate the probable cause, based on Fedaczynsky's allegations, upon which defendants acted before the remarks were ever made; by the time the remarks were spoken by casino personnel, Kosko had assumed control of Hickson's detention. Lastly, even if those remarks could evince discriminatory animus, as explained above, defendants proffer legitimate, non-discriminatory reasons for their treatment of and interaction with Hickson.

Moreover, defendants assert a legitimate, non-discriminatory reason for their actions—Hickson's alleged offense of taking another person's casino voucher. Hickson presents no genuine issue of material fact to challenge this reason other than to say that he did not unlawfully take it. Therefore, defendants are granted summary judgment with respect to Hickson's Section 1981 claim.

### 5. Conspiracy

In addition to his Section 1983 claims, Hickson also alleges that defendants and others, including New Jersey judges and prosecutors, conspired to deprive him of his constitutional rights through malicious prosecution, false arrest/imprisonment, abuse of process, and other means.

■ "In order to demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *Woods v. Grant*, 381 Fed. Appx. 144, 147 (3d Cir.2010) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir.1993)). Hickson has not carried his burden to establish a conspiracy claim under Section 1983.

■ First, Hickson has not demonstrated any violation of his federal constitutional or statutory rights. Accordingly, he cannot proceed with his conspiracy claim.[22] *See Baltimore v. Harrisburg Parking Auth.*, 2010 U.S. Dist. LEXIS 59508, at *29 (M.D.Pa. Jun. 16, 2010) ("In any case, because Plaintiff fails to state an underlying § 1983 violation against Defendants, her claim for conspiracy must also be dismissed." (citing *Boyanowski v. Capi-*

*tal Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir.2000))).

Second, Hickson fails to set forth sufficient evidence to engender a genuine issue of material fact. Hickson relies primarily upon his own allegations, inferences, and conclusions to support his conspiracy claims. Without more, these claims cannot survive summary judgment. *See Exantus*, 386 Fed.Appx. at 353–54; *see also Revak v. Lieberum*, 2009 WL 1099187, at *3, 2009 U.S. Dist. LEXIS 34691, at *8 (W.D.Pa. Apr. 23, 2009) (granting summary judgment to defendants with regard to Section 1983 conspiracy claims because plaintiff proffered no evidence to show that defendants conspired to violate plaintiff's rights, to destroy a videotape depicting parties' interactions, or to otherwise conceal actual events).

■ Hickson's conspiracy allegations do not stem from any personal knowledge of fact, but rather are entirely speculative and conclusory, drawing and relying on inferences wholly unsupported by any concrete evidence. There is simply nothing in the record from which a jury could reasonably conclude that the named defendants and other parties entered into an agreement to violate Hickson's rights. Other than alleging an overarching conspiracy perpetrated in favor of New Jersey's casino industry and designed to insulate a growing number of tortfeasors, Hickson has not proffered anything to raise a genuine issue of material fact as to the time, place, or nature of the agreement or the cooperation and understanding between the named defendants and other supposed parties. Among the only actual, affirma-

---

**22.** The theory of conspiracy does not yield an independent cause of action under Section 1983, but instead presents merely a means to impute liability to other wrongdoers for violations of federal rights. *Revak v. Lieberum*, 2009 WL 1099187, at *1–2, 2009 U.S. Dist.

LEXIS 34691, at *4 (W.D.Pa. Apr. 23, 2009). That precept resounds here where Hickson alleges conspiracy in relation to each of his Section 1983 claims and identifies as conspirators defendants and third parties not named in the complaint.

tive evidence furnished in support of his claims are the photographic images from the casino's surveillance camera depicting the events in question. Again, these images—many of which are difficult to decipher as presented to the Court—do not prove any elements of Hickson's causes of actions absent some credible testimony concerning their import.[23]

■■■ Therefore, for the reasons stated above, defendants are granted summary judgment with respect to Hickson's Section 1983 claims alleging conspiracy.[24]

### C. Plaintiff's Motions for Summary Judgment

In December 2009, Hickson moved for summary judgment against defendants.[25] In March 2010, he "renewed" or supplemented his request for summary judgment. For the reasons heretofore, Hickson's motions for summary judgment, with respect to his federal claims, must be denied. However, the Court is compelled to respond to several issues raised in Hickson's motions and reiterate some conclusions already enunciated in this Opinion.

First, Hickson repeatedly asserts his entitlement to summary judgment on the grounds that defendants did not specifically respond to his "Brief in Support of Complaint" or his other submissions. Defendants' lack of a response, Hickson opines, equates to a concession of the relevant events and alleged liabilities.[26] It is worth noting, however, that defendants filed answers in response to Hickson's complaint, which has been amended three times. See Rago v. City of Pittsburgh, 2010 WL 2991202, at *6, 2010 U.S. Dist. LEXIS 76739, at *18 (W.D.Pa. Jul. 29, 2010) (concluding that "[s]ummary judgment cannot be granted in plaintiff's favor based upon the pleadings alone"). Further, defendants have also responded to and opposed Hickson's motions for summary judgment, along with submitting their own dispositive motions.

Second, Hickson relies upon photographic images captured by a casino sur-

23. Although Hickson does not refer to it, his complaint could be read to implicate 42 U.S.C. § 1985(3). Section 1985(3) combats conspiracies predicated on invidious racial or class discrimination designed to deprive an individual of equal treatment of the law. Wright v. Loftus, 2009 WL 4051244, at *3–4, 2009 U.S. Dist. LEXIS 108639, at *9 (M.D.Pa. Nov. 20, 2009) (citing Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.1997)). However, were Section 1985 at issue in this case, Hickson fails to support such a claim with any evidence necessary to advance it, and for that reason, a Section 1985 claim should suffer the same fate as Hickson's Section 1983 claims. See Woods, 381 Fed.Appx. at 147 n. 2 (holding that plaintiff cannot sustain a Section 1985 claim because he "has not alleged any facts from which we can infer that Defendants colluded with the requisite discriminatory animus to deprive him of his constitutional rights").

24. Hickson also articulates a Section 1983 cause of action for fraud. The Court questions whether Section 1983 is the proper vehicle to assert a cause of action for fraud, a claim usually borne by state law. To the extent that allegations of fraud may be advanced pursuant to Section 1983 or intersect with his other claims, Hickson proffers no evidence to support his cause of action.

25. Hickson's original motion for summary judgment appears, in large part, to recapitulate the complaint's averments and defendants' answers to those averments, followed by Hickson's own arguments and conclusions as to the credibility and legitimacy of defendants' answers.

26. Repeated throughout his Motion for Summary Judgment, among other things, Hickson asserts: "No answering defendant has responded to said brief, citing any basis i[n] fact and law to rebut plaintiff's Brief in Support of Complaint, signifying a waiver and or inability to muster any rebuttal that would dispel plaintiff's basis in fact and law, leaving no issue as to said averment."

veillance camera to bolster his claim that the voucher at issue was abandoned and that the videotape depicting the relevant events was manipulated. Again, many of these images as presented to the Court offer limited visibility. Further, besides his own averments, nothing in the record augments Hickson's claims, especially regarding the alleged manipulation of the video footage. Absent some affirmative evidence at this stage of litigation, Hickson cannot merely rely on his general accusations and suspicions concerning the malicious manipulation of video technology and a mass conspiracy to infringe upon his civil rights. In other words, no genuine issues of material fact exist with regard to those contentions so that a trier of fact could reasonably rule in Hickson's favor.

Third, Hickson continuously asserts that any claim he made to credits in the slot machine were justified in view of their abandonment. Naturally, Hickson contests Fedaczynsky's statements in which she claims ownership over the credits and alleges that Hickson stole them. The question whether the credits were actually abandoned is immaterial to the present proceedings. Rather, the germane question pertains to defendants' actions given the context and totality of the circumstances. Defendants' actions, as already explained, were justified and do not provide the basis for a viable Section 1983 claim as articulated by Hickson.

Fourth, and finally, within his submissions to the Court, Hickson continuously conjures a "machination of unlawful eviction" wherein defendants and other entities, including judges and other state officials, have jointly acted to eject and evict Hickson, and other similarly situated persons, from the casinos. Based on the Court's reading of the allegations in Hickson's amended complaint and the record as a whole, the question whether Hickson was impermissibly blackballed from the Casino is not squarely before the Court or imperative to the claims Hickson has specifically enumerated. Hickson's voluminous allegations of malicious prosecution, false arrest/imprisonment, abuse of process, racial discrimination, and corresponding claims of conspiracy, have been addressed and ruled in favor of defendants. Should Hickson have other allegations apart from his remaining state law claims, he may attempt to pursue them in due course. However, to the Court's understanding, Hickson has not alleged any other colorable causes of action that warrants the Court's attention at this time.[27]

## D. Supplemental Jurisdiction

Hickson's remaining claims against defendants seem to implicate New Jersey constitutional, statutory, and common law. Because Hickson's federal claims have been dismissed, the Court, *sua sponte*, raises the issue of supplemental jurisdiction over the remaining state law claims.

> 28 U.S.C. § 1367 reads, in relevant part, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). However, "[a] district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction.'" *Oras v. City of Jersey City*, 328 Fed.Appx. 772, 775 (3d Cir.2009) (quoting 28 U.S.C.

---

27. Any other arguments that Hickson mentions throughout his hundreds of pages of submissions are found to be without merit or beyond the scope of his particularized claims.

§ 1367(c)(3)). " '[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.' " *Id.* (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)); *see Livingston v. Borough of McKees Rocks*, 223 Fed.Appx. 84, 88–89 (3d Cir.2007) (holding that because the district court correctly granted summary judgment in favor of defendants on all of plaintiffs' federal claims, "it was appropriate for the Court to decline to exercise supplemental jurisdiction over the [plaintiffs'] state claims"); *Santiago v. York County*, 2010 U.S. Dist. LEXIS 67437, at **10–11 (M.D.Pa. Jul. 7, 2010) (declining to exercise supplemental jurisdiction over state law claims after granting defendants summary judgment as to plaintiffs' Section 1983 claims).

The Court questions whether any considerations of judicial economy, convenience, or fairness would warrant its continued adjudication of this case. As such, the Court is inclined to refrain from exercising supplemental jurisdiction in this case but, in the interests of fairness and prudence, will offer Hickson an opportunity to explain why this case should remain before this Court. Accordingly, the Court orders Hickson to show cause, within twenty (20) days of the date of this Opinion, why it should exercise supplemental jurisdiction over the remaining pendent state law claims. Defendants shall have seven (7) days from the submission of Hickson's response to file their own responses to the Court's Opinion.

Consequently, the Court does not opine on the merits of Hickson's state law claims. To the extent that defendants asked the Court to grant them summary judgment with respect to the state law claims, defendants' motions are denied, without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the State defendants' Motion for Summary Judgment is granted in part and denied in part. Second, the Casino defendants' Motion for Summary Judgment is granted in part and denied in part. Third, Hickson's Motion for Summary Judgment and "Renewed/Supplemental" Motion for Summary Judgment are denied. Lastly, the Court orders Hickson to show cause why, in the absence of any pending federal claims, the Court should not decline to exercise supplemental jurisdiction over the remaining state law causes of action. An Order consistent with this Opinion will be entered.